No. 2024-2351

# United States Court of Appeals for the Federal Circuit

REGENERON PHARMACEUTICALS, INC.,

*Plaintiff-Appellant,*

v.

MYLAN PHARMACEUTICALS INC., AMGEN USA, INC., BIOCON BIOLOGICS INC., CELLTRION, INC., FORMYCON AG, SAMSUNG BIOEPIS CO., LTD.,

*Defendants,*

AMGEN INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the Northern District of West Virginia in No. 1:24-md-03103-TSK-JPM, Chief Judge Thomas S. Kleeh.

**RESPONSE BRIEF OF DEFENDANT-APPELLEE AMGEN INC.**

Wendy Whiteford
Eric Agovino
Chanson Chang
Pauline Pelletier
AMGEN INC.
One Amgen Center Drive
Thousand Oaks, CA 91320
(805) 447-1000

Jeffrey A. Lamken
Robert K. Kry
Lucas M. Walker
Kayvon Ghayoumi
MOLOLAMKEN LLP
600 New Hampshire Ave., NW, Suite 500
Washington, D.C. 20037
(202) 556-2010

*Attorneys for Defendant-Appellee Amgen Inc.*
*(counsel listing continued on following page)*

E. Anthony Figg
Joseph A. Hynds
Jennifer Nock
Brett A. Postal
ROTHWELL, FIGG, ERNST,
& MANBECK, P.C.
901 New York Avenue, NW
Suite 900 East
Washington, D.C. 20001
(202) 783-6040

John R. Labbe
Kevin M. Flowers
Thomas Burns
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, IL 60606
(312) 474-6300

*Attorneys for Defendant-Appellee Amgen Inc.*

## PATENT CLAIMS AT ISSUE

This appeal concerns claims 2, 3, 27, and 28 of U.S. Patent No. 11,084,865.

Claim 1 recites:

1. A vial comprising an ophthalmic formulation suitable for intravitreal administration that comprises:

a vascular endothelial growth factor (VEGF) antagonist

an organic co-solvent,

a buffer, and

a stabilizing agent,

wherein said VEGF antagonist fusion protein is glycosylated and comprises amino acids 27-457 of SEQ ID NO:4; and

wherein at least 98% of the VEGF antagonist is present in native conformation following storage at 5° C. for two months as measured by size exclusion chromatography.

Claim 2 recites:

2. The vial of claim 1, wherein the concentration of said VEGF antagonist fusion protein is 40 mg/ml, and wherein said organic co-solvent comprises polysorbate.

Claim 3 recites:

3. The vial of claim 2, wherein said organic co-solvent comprises 0.01% to 3% polysorbate.

<u>Claim 26 recites</u>:

26. A pre-filled syringe comprising an ophthalmic formulation suitable for intravitreal administration comprising:

a vascular endothelial growth factor (VEGF) antagonist fusion protein,

an organic co-solvent,

a buffer, and

a stabilizing agent;

wherein said VEGF antagonist fusion protein is glycosylated and comprises amino acids 27-457 of SEQ ID NO:4; and

wherein at least 98% of said VEGF antagonist fusion protein is present in native conformation following storage at 5° C. for two months as measured by size exclusion chromatography.

<u>Claim 27 recites</u>:

27. The pre-filled syringe of claim 26, wherein the concentration of said VEGF antagonist fusion protein is 40 mg/ml, and wherein said organic co-solvent comprises polysorbate.

<u>Claim 28 recites</u>:

28. The pre-filled syringe of claim 27, wherein said organic co-solvent comprises 0.01% to 3% polysorbate.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2024-2351

**Short Case Caption** Regeneron Pharmaceuticals, Inc. v. Mylan Pharmaceuticals Inc.

**Filing Party/Entity** Amgen Inc.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 11/4/2024

Signature: /s/ Jeffrey A. Lamken

Name: Jeffrey A. Lamken

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Amgen Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☑ Additional pages attached

| | | |
|---|---|---|
| See Exhibit A | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## Exhibit A

4. **Legal Representatives**. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

   PROSKAUER ROSE LLP: Siegmund Y. Gutman; Shawn S. Ledingham, Jr.; Scott P. Cooper

   BOWLES RICE LLP: Stuart A. McMillan; Ashley Hardesty Odell; Kaitlyn N. McKitrick; Ryan Moore; Karly King

   HENDRICKSON & LONG, PLLC: John H. Tinney, Jr.

# TABLE OF CONTENTS

Page


INTRODUCTION ..... 1

STATEMENT OF THE CASE ..... 6

I. Regeneron's '865 Patent ..... 6

A. The Patent Claims ..... 7

B. The Specification ..... 8

II. The Parties' Products ..... 9

A. Regeneron's Eylea ..... 9

B. Amgen's ABP 938 ..... 10

C. Other Biosimilars ..... 11

III. Regeneron's Suits Against Other Biosimilars ..... 12

A. Regeneron's Suit Against Mylan ..... 12

B. Regeneron's Suit Against Formycon ..... 14

C. Regeneron's Other Suits ..... 15

IV. Proceedings in This Case ..... 16

A. Regeneron's Suit Against Amgen ..... 16

B. The District Court's Decision ..... 16

SUMMARY OF ARGUMENT ..... 19

STANDARD OF REVIEW ..... 24

ARGUMENT ..... 24

I. The District Court Properly Applied the *Becton* Presumption ..... 25

A. *Becton* Establishes a Presumption that Separately Recited Claim Elements Require Separate and Distinct Components ............26

B. The District Court Properly Applied *Becton* ....................................28

II. Regeneron's Contrary Arguments Are Meritless ........................................31

A. The District Court's Preliminary Claim Construction in *Formycon* Is Irrelevant ....................................................................31

1. *Formycon* Addressed a Different Issue ...................................32

2. The District Court Was Not Required To Engage in Unnecessary Claim Construction............................................33

3. *Formycon*'s Preliminary Claim Construction Is Entitled to No Weight in This Case......................................................34

B. Regeneron's Efforts To Rewrite *Becton* and Its Progeny Defy This Court's Precedents ....................................................................38

1. This Court's Cases Foreclose Regeneron's Interpretation .......39

2. Regeneron's Authorities Are Inapposite..................................42

C. Regeneron Fails To Overcome the *Becton* Presumption ....................44

1. The Intrinsic Record Does Not Overcome the *Becton* Presumption ........................................................................45

2. The Extrinsic Evidence Favors Amgen ...................................48

III. Regeneron's Construction Renders the '865 Patent Invalid for Lack of Written Description .........................................................................52

IV. The Court Need Not Address Regeneron's Arguments over What Substances Qualify as a "Buffer" ...............................................................55

V. The '865 Patent Is Invalid for Obviousness-Type Double Patenting...........57

A. The '865 Patent Is an Improper Attempt To Extend Regeneron's Exclusivity over Eylea .................................................57

B. Double Patenting Principles Apply When a Patent Expires Due to a Terminal Disclaimer ....... 58

C. There Is No Patentable Distinction Between the Asserted Claims and the Expired Claim ....... 59

VI. The Court Should Remand for a Calculation of Damages from the Temporary Injunction ....... 61

CONCLUSION ....... 62

# TABLE OF AUTHORITIES

Page(s)

## Cases

*AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.*,
759 F.3d 1285 (Fed. Cir. 2014) ....................53

*In re Aflibercept Pat. Litig.*,
No. 1:22-cv-61, 2024 WL 3177913 (N.D.W. Va. June 21, 2024) ....................13

*In re Aflibercept Pat. Litig.*,
No. 1:23-cv-97, 2024 WL 3423047 (N.D.W. Va. July 9, 2024) ....................15, 35, 36

*Am. Silicon Techs. v. United States*,
261 F.3d 1371 (Fed. Cir. 2001) ....................35

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
598 F.3d 1336 (Fed. Cir. 2010) (en banc) ....................52

*Bayer CropScience AG v. Dow AgroSciences LLC*,
728 F.3d 1324 (Fed. Cir. 2013) ....................57

*Becton, Dickinson & Co. v. Tyco Healthcare Group LP*,
616 F.3d 1249 (Fed. Cir. 2010) ....................*passim*

*Cannon Rubber Ltd. v. First Years, Inc.*,
163 F. App'x 870 (Fed. Cir. 2005) ....................44

*DexCom, Inc. v. Abbott Diabetes Care, Inc.*,
89 F.4th 1370 (Fed. Cir. 2024) ....................24

*Eli Lilly & Co. v. Barr Labs., Inc.*,
251 F.3d 955 (Fed. Cir. 2001) ....................57, 59

*Endo Pharms. Inc. v. Actavis LLC*,
922 F.3d 1365 (Fed. Cir. 2019) ....................24, 50

*Forest Labs., LLC v. Sigmapharm Labs., LLC*,
918 F.3d 928 (Fed. Cir. 2019) ....................24

*Gelboim v. Bank of Am. Corp.*,
574 U.S. 405 (2015) ....................36

*Genentech, Inc. v. Sandoz Inc.*,
55 F.4th 1368 (Fed. Cir. 2022) ....................................................................24, 50

*In re Glass*,
492 F.2d 1228 (C.C.P.A. 1974) ..........................................................................51

*Google LLC v. EcoFactor, Inc.*,
92 F.4th 1049 (Fed. Cir. 2024) ..........................................................27, 28, 43, 48

*Google LLC v. Pers. Audio, LLC*,
743 F. App'x 978 (Fed. Cir. 2018) .....................................................................44

*GPNE Corp. v. Apple Inc.*,
830 F.3d 1365 (Fed. Cir. 2016) ..........................................................................34

*Home Depot USA, Inc. v. Lafarge N. Am., Inc.*,
59 F.4th 55 (3d Cir. 2023) ..................................................................................36

*HTC Corp. v. Cellular Commc'ns Equip., LLC*,
701 F. App'x 978 (Fed. Cir. 2017) .................................................................27, 41

*Intel Corp. v. ULSI Sys. Tech., Inc.*,
995 F.2d 1566 (Fed. Cir. 1993) ..........................................................................24

*Ironburg Inventions Ltd. v. Valve Corp.*,
64 F.4th 1274 (Fed. Cir. 2023) ..........................................................................38

*Juno Therapeutics, Inc. v. Kite Pharma, Inc.*,
10 F.4th 1330 (Fed. Cir. 2021) ..........................................................................52

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007)...............................................................................................60

*Kyocera Senco Indus. Tools Inc. v. ITC*,
22 F.4th 1369 (Fed. Cir. 2022) ....................................................................*passim*

*Linear Tech. Corp. v. ITC*,
566 F.3d 1049 (Fed. Cir. 2009) ....................................................................44, 48

*L.A. Biomedical Rsch. Inst. v. Eli Lilly*,
849 F.3d 1049 (Fed. Cir. 2017) ..........................................................................44

*Medytox, Inc. v. Galderma S.A.*,
71 F.4th 990 (Fed. Cir. 2023) ....................................................................38

*Metalcraft of Mayville, Inc. v. Toro Co.*,
848 F.3d 1358 (Fed. Cir. 2017) ..................................................................25

*In re Nat'l Prescription Opiate Litig.*,
956 F.3d 838 (6th Cir. 2020) ......................................................................36

*Natera, Inc. v. NeoGenomics Labs., Inc.*,
106 F.4th 1369 (Fed. Cir. 2024) ..................................................................24

*Outside the Box Innovations, LLC v. Travel Caddy, Inc.*,
695 F.3d 1285 (Fed. Cir. 2012) ..................................................................37

*Pfizer, Inc. v. Teva Pharms., USA, Inc.*,
429 F.3d 1364 (Fed. Cir. 2005) ..................................................................37

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ...........................................................*passim*

*Powell v. Home Depot U.S.A., Inc.*,
663 F.3d 1221 (Fed. Cir. 2011) ..........................................................43, 48

*Promptu Sys. Corp. v. Comcast Corp.*,
92 F.4th 1372 (Fed. Cir. 2024) ....................................................................34

*Regeneron Pharms., Inc. v. Formycon AG*,
No. 1:23-cv-97 (N.D.W. Va.) .....................................................................14

*Regeneron Pharms., Inc. v. Mylan Pharms. Inc.*,
No. 1:22-cv-61 (N.D.W. Va.) .....................................................................12

*Regeneron Pharms., Inc. v. Mylan Pharms. Inc.*,
714 F. Supp. 3d 652 (N.D.W. Va. 2024)...................................12, 13, 30, 54

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*,
653 F.3d 1296 (Fed. Cir. 2011) ..........................................................43, 48

*Seabed Geosolutions (US) Inc. v. Magseis FF LLC*,
8 F.4th 1285 (Fed. Cir. 2021) ......................................................................49

*Sun Pharms. Indus. Ltd. v. Saptalis Pharms., LLC*,
No. 18-cv-648, 2019 WL 2549267 (D. Del. June 19, 2019) .......................28, 42

*Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*,
785 F.3d 625 (Fed. Cir. 2015) ..........................................................25

*Taylor v. Sturgell*,
553 U.S. 880 (2008)..........................................................................35

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
574 U.S. 318 (2015)..........................................................................50

*Veterans4You LLC v. United States*,
985 F.3d 850 (Fed. Cir. 2021) ..........................................................57

*Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*,
200 F.3d 795 (Fed. Cir. 1999) ..........................................................34

*Application of Voss*,
557 F.2d 812 (C.C.P.A. 1977) ..........................................................51

*In re Yamazaki*,
702 F.3d 1327 (Fed. Cir. 2012) ........................................................58

*Yeda Rsch. v. Mylan Pharms. Inc.*,
906 F.3d 1031 (Fed. Cir. 2018) ........................................................46

## STATUTES

35 U.S.C. § 112(a) ..............................................................................52

35 U.S.C. § 253(b) ..............................................................................58

Former 35 U.S.C. § 102(e) ..................................................................51

## STATEMENT OF RELATED CASES

The following appeals from *In re Aflibercept Patent Litigation*, No. 1:24-MD-3103 (N.D.W. Va.), are pending before this Court: *Regeneron Pharmaceuticals, Inc. v. Mylan Pharmaceuticals Inc.*, No. 24-01965 (Fed. Cir.); *Regeneron Pharmaceuticals, Inc. v. Mylan Pharmaceuticals Inc.*, No. 24-01966 (Fed. Cir.); *Regeneron Pharmaceuticals, Inc. v. Mylan Pharmaceuticals Inc.*, No. 24-02002 (Fed. Cir.); *Regeneron Pharmaceuticals, Inc. v. Mylan Pharmaceuticals Inc.*, No. 24-02009 (Fed. Cir.); *Regeneron Pharmaceuticals, Inc. v. Mylan Pharmaceuticals Inc.*, No. 24-02019 (Fed. Cir.); *Regeneron Pharmaceuticals, Inc. v. Mylan Pharmaceuticals Inc.*, No. 24-02058 (Fed. Cir.); *Regeneron Pharmaceuticals, Inc. v. Mylan Pharmaceuticals Inc.*, No. 24-02082 (Fed. Cir.); *Regeneron Pharmaceuticals, Inc. v. Mylan Pharmaceuticals Inc.*, No. 24-02083 (Fed. Cir.); *Regeneron Pharmaceuticals, Inc. v. Mylan Pharmaceuticals Inc.*, No. 24-02147 (Fed. Cir.); and *Regeneron Pharmaceuticals, Inc. v. Mylan Pharmaceuticals Inc.*, No. 24-02156 (Fed. Cir.).

The following district court cases may affect or be affected by this appeal: *Regeneron Pharmaceuticals, Inc. v. Amgen, Inc.*, No. 2:24-cv-00264 (C.D. Cal.); *Regeneron Pharmaceuticals, Inc. v. Samsung Bioepis Co., Ltd.*, No. 1:23-cv-00094 (N.D.W. Va.); *Regeneron Pharmaceuticals, Inc. v. Celltrion, Inc.*, No. 1:23-cv-00089 (N.D.W. Va.); *Regeneron Pharmaceuticals, Inc. v. Celltrion, Inc.*, No. 1:24-cv-00053 (N.D.W. Va.); *Regeneron Pharmaceuticals, Inc. v. Mylan Pharma-*

*ceuticals Inc.*, No. 1:22-cv-00061 (N.D.W. Va.); and *Regeneron Pharmaceuticals, Inc. v. Sandoz Inc.*, No. 2:23-cv-08760 (D.N.J.).

The following proceedings before the United States Patent and Trademark Office may affect or be affected by this appeal: *Samsung Bioepis Co., Ltd. v. Regeneron Pharmaceuticals, Inc.*, IPR2023-00442 (P.T.A.B.); *Samsung Bioepis Co., Ltd. v. Regeneron Pharmaceuticals, Inc.*, IPR2023-00739 (P.T.A.B.); *Biocon Biologics Inc. v. Regeneron Pharmaceuticals, Inc.*, IPR2024-00201 (P.T.A.B.); *Mylan Pharmaceuticals Inc. v. Regeneron Pharmaceuticals, Inc.*, IPR2021-00881 (P.T.A.B.); *Celltrion, Inc. v. Regeneron Pharmaceuticals, Inc.*, IPR2022-00258 (P.T.A.B.); *Apotex Inc. v. Regeneron Pharmaceuticals, Inc.*, IPR2022-00298 (P.T.A.B.); *Mylan Pharmaceuticals Inc. v. Regeneron Pharmaceuticals, Inc.*, IPR2021-00880 (P.T.A.B.); *Celltrion, Inc. v. Regeneron Pharmaceuticals, Inc.*, IPR2022-00257 (P.T.A.B.); *Apotex Inc. v. Regeneron Pharmaceuticals, Inc.*, IPR2022-00301 (P.T.A.B.); *Samsung Bioepis Co., Ltd. v. Regeneron Pharmaceuticals, Inc.*, IPR2023-00884 (P.T.A.B.); *Celltrion, Inc. v. Regeneron Pharmaceuticals, Inc.*, IPR2024-00260 (P.T.A.B.); *Biocon Biologics Inc. v. Regeneron Pharmaceuticals, Inc.*, IPR2024-00298 (P.T.A.B.); *Apotex Inc. v. Regeneron Pharmaceuticals, Inc.*, IPR2022-01524 (P.T.A.B.); *Mylan Pharmaceuticals Inc. v. Regeneron Pharmaceuticals, Inc.*, IPR2023-00099 (P.T.A.B.); and *Chengdu Kanghong Biotechnology Co., Ltd. v. Regeneron Pharmaceuticals, Inc.*, PGR2021-00035 (P.T.A.B.).

# INTRODUCTION

This Court's decision in *Becton, Dickinson & Co. v. Tyco Healthcare Group LP*, 616 F.3d 1249 (Fed. Cir. 2010), holds that, "[w]here a claim lists elements separately, 'the ***clear implication*** of the claim language' is that those elements are '***distinct component[s]***' of the patented invention." *Id.* at 1254 (emphasis added). Finding nothing to rebut that clear implication, the district court correctly construed Regeneron's patent claims to require that the four separately listed claim elements correspond to separate and distinct components. Amgen's product, ABP 938, lacks one of those separate components. Regeneron thus failed to show a likelihood of proving infringement, and the court properly denied a preliminary injunction. This Court should affirm.

Regeneron's U.S. Patent No. 11,084,865 (the "'865 patent") claims pharmaceutical formulations that contain four separately listed elements, each set forth on a separate line:

> [a] a vascular endothelial growth factor (VEGF) antagonist
> [i.e., aflibercept,]
>
> [b] an organic co-solvent,
>
> [c] a buffer, and
>
> [d] a stabilizing agent.

Appx103 (19:29-34). Consistent with those claims, Regeneron's ophthalmic drug Eylea contains those four distinct components: (1) a VEGF antagonist (aflibercept);

(2) an organic co-solvent; (3) a buffer; and (4) a stabilizing agent. Amgen's FDA-approved biosimilar, ABP 938, differs from the '865 patent claims, Eylea, and all of Eylea's other biosimilars in a critical respect. ABP 938 does ***not*** contain those four separate components. Instead, through years of research and effort, Amgen discovered a way to prepare and formulate the active ingredient, aflibercept, that eliminates the need for a separate buffer—achieving a formulation with only three of the separate claimed components that is ***more stable*** than Eylea.

In a thorough 90-page opinion, the district court correctly held that those facts preclude Regeneron from showing a likelihood of infringement. This Court's decision in *Becton* is clear: "Where a claim lists elements separately, 'the ***clear implication*** of the claim language' is that those elements are 'distinct component[s]' of the patented invention." 616 F.3d at 1254 (emphasis added). In other words, when "[t]he asserted claims list . . . elements separately," "[t]here is . . . a ***presumption*** that those components are distinct." *Kyocera Senco Indus. Tools Inc. v. ITC*, 22 F.4th 1369, 1382 (Fed. Cir. 2022) (emphasis added).

The district court properly applied this Court's precedents. The '865 patent "lists elements separately," reciting four separate structures, each on a separate line. Under *Becton*, that separate recitation creates a presumption that the claims require four separate components. The district court thus correctly recognized that the '865

patent presumptively does not cover formulations like Amgen's with only ***three*** of the separate claimed components.

The district court also correctly held that Regeneron failed to rebut that presumption. Nothing in the intrinsic record hints that a single component can satisfy multiple recited elements—much less that the active ingredient, aflibercept, can simultaneously act as the separately recited "buffer." ***Every*** example and ***every*** embodiment in the specification—all thirty of them—has a buffer that is ***separate from*** the VEGF antagonist. That clear intrinsic record makes it unnecessary to consider extrinsic evidence. But the district court found that the extrinsic evidence favored Amgen too: No one had conceived of using the therapeutic protein aflibercept to maintain pH stability in a pharmaceutical product until Amgen pioneered that approach ***after*** the '865 patent's priority date.

Before learning about Amgen's formulation, Regeneron read its claims the same way. During its bench trial against Mylan, Regeneron responded to written description and enablement challenges by urging that the claims were narrow because each separately recited element was a critical structural limitation:

> Our claim . . . is ***full of structural limitation***. It has to have aflibercept. That's a structure. Organic cosolvent. Buffer. Stabilizing agent. ***Those are all structures that limit what formulations are in the claim. If you don't have an organic cosolvent or a buffer, you're out of our claim.***

Appx13400 (emphasis added). Only after learning about Amgen's buffer-free formulation did Regeneron switch positions.

Regeneron barely engages with the district court's careful application of *Becton*. Instead, Regeneron argues that the court's claim construction conflicts with a preliminary construction the court adopted at the preliminary injunction stage in a different suit against Formycon. In that case, the court construed "buffer" to mean any "substance that resists changes to pH . . . including, for example, histidine, phosphate, and proteins like aflibercept." Appx26. *Formycon* did not address whether the claims require a buffer that is ***separate from*** the other three separately recited elements. To the contrary, Formycon's product included a separate histidine buffer and thus had four distinct components. *Formycon* therefore had no reason to address the *Becton* issue that was dispositive here, and it never did so. The two cases are consistent because they turned on different issues.

In any event, the district court's preliminary claim construction in *Formycon* deserves zero weight here. Amgen was not a party to that case and had no access to the sealed filings. And whether a "protein like aflibercept" could be a buffer made no difference to the outcome there: Formycon's product used a separate histidine buffer. Regeneron nonetheless inserted the "proteins like aflibercept" language into its proposed claim construction in *Formycon*, just a few months after learning the details of ***Amgen's*** confidential formulation, in a case where Amgen had no opportunity to respond. Even if there were tension between the court's decision in *Formycon* and its decision here—and there is not—the court's thorough analysis in

this case makes clear that the decision below is correct. Regeneron cannot obtain reversal merely by pointing to the district court's decision in another case that in no way binds this Court.

Regeneron also tries to rewrite this Court's precedents. To apply *Becton*, it asserts, a court must first construe each claim element and then compare the elements to determine whether they have "overlapping scope." If that construction shows that it is ***physically possible*** for a single component to correspond to multiple separately recited claim elements, Regeneron urges, the *Becton* presumption does not apply. That new theory—raised for the first time on appeal—stands *Becton* on its head. The *Becton* presumption only matters in cases where it is physically possible for a single component to satisfy more than one claim element. The whole point of the *Becton* presumption is to determine in those cases whether the claims nonetheless require a separate component for each separately recited element.

Regeneron's construction would not help its case regardless. Construing the asserted claims to encompass Amgen's three-component product would render the claims invalid for lack of written description. The '865 patent contains no written description support whatsoever for a formulation where the active ingredient, aflibercept, is also the buffer. That omission is hardly surprising: Buffer-free protein formulations were unknown until ***Amgen*** invented them.

## STATEMENT OF THE CASE

This case concerns pharmaceutical products designed to treat serious eye disorders. When injected into the eye, the fusion protein aflibercept controls excessive blood vessel growth that can damage a patient's vision. Plaintiff-Appellant Regeneron Pharmaceuticals, Inc. ("Regeneron") holds a patent that claims formulations with ***four*** separate components—a VEGF antagonist (aflibercept), an organic co-solvent, a buffer, and a stabilizing agent. Regeneron markets a product, Eylea, that contains those four components. Defendant-Appellee Amgen Inc. ("Amgen") developed a biosimilar of Eylea that contains only ***three*** of those components. Amgen discovered a way to prepare and formulate aflibercept that eliminates the need for a separate buffer. The question in this case is whether Amgen's three-component product infringes Regeneron's four-element claims.

### I. REGENERON'S '865 PATENT

Regeneron's U.S. Patent No. 11,084,865 is directed to pharmaceutical formulations of a fusion protein known as aflibercept, identified in the patent by its amino acid sequence. Appx96 (6:27-39); Appx99-103; Appx12879 (¶62). Aflibercept, when injected into a patient's eye, controls excessive blood vessel growth by inhibiting a growth factor known as "vascular endothelial growth factor" or "VEGF." Appx94 (1:45-52). Aflibercept is thus known as a VEGF "antagonist." Appx94 (2:14-15). Regeneron formerly held a patent covering aflibercept itself, but

that patent expired in June 2023. Appx9744. Regeneron is accordingly now asserting patents for specific formulations of aflibercept. One of those patents is the ’865 patent. Issued on August 10, 2021, the ’865 patent claims priority to a June 16, 2006, provisional application. Appx92.

### A. The Patent Claims

The ’865 patent claims formulations with four specific, separately listed elements, each set forth on a separate line. For example, claim 1 recites:

> 1. A vial comprising an ophthalmic formulation suitable for intravitreal administration that comprises:
>
> [a] a vascular endothelial growth factor (VEGF) antagonist
>
> [b] an organic co-solvent,
>
> [c] a buffer, and
>
> [d] a stabilizing agent,
>
> wherein said VEGF antagonist fusion protein is glycosylated and comprises amino acids 27-457 of SEQ ID NO:4; and
>
> wherein at least 98% of the VEGF antagonist is present in native conformation following storage at 5° C. for two months as measured by size exclusion chromatography.

Appx103 (19:29-41). Independent claim 26 claims a formulation with those same four separate elements, but requires a “pre-filled syringe” rather than a “vial.” Appx103-04 (20:66-21:12).

This case concerns dependent claims 2, 3, 27, and 28. Claim 2 depends from claim 1, but adds two more requirements: “the concentration of said VEGF

antagonist fusion protein is 40 mg/ml" and "said organic co-solvent comprises polysorbate." Appx103 (19:41-43). Claim 3 adds one more requirement: "said organic co-solvent comprises 0.01% to 3% polysorbate." Appx103 (19:44-45). Dependent claims 27 and 28 are essentially identical, but they depend from claim 26's "pre-filled syringe" version of the formulation rather than claim 1's "vial" version. Appx104 (21:13-18).

### B. The Specification

The '865 patent's specification consistently describes the VEGF antagonist as a component separate and distinct from the formulation's other three components. The patent describes the VEGF antagonist as the formulation's only active pharmaceutical ingredient, a substance with specific therapeutic properties. Appx96 (6:25-59). The "Summary of the Invention" identifies the VEGF antagonist as a "fusion protein" and references the amino acid sequence for aflibercept. Appx94 (2:14-32). The patent then explains how to create "a stable liquid ophthalmic formulation" in which the VEGF antagonist is combined with various ***other*** components: "one or more organic co-solvent(s)," "one or more tonicity agent(s)," "a buffering agent," and "a stabilizing agent." Appx94 (2:33-38). With respect to the buffer, the specification states: "[T]he buffering agent may be, for example, phosphate buffer. In a specific embodiment, the phosphate buffer is a sodium

phosphate buffer." Appx94 (2:45-48). The specification nowhere suggests that the VEGF antagonist itself could be the "buffer" or "buffering agent."

The specification discloses eight "examples" along with twenty-two additional embodiments of the invention. All eight examples list the VEGF antagonist along with a ***separate*** buffer, namely, "phosphate." Appx97-99 (8:32-58, 8:60-9:17, 9:19-44, 9:45-10:10, 10:13-38, 10:40-67, 11:1-26, 12:1-26). All twenty-two additional embodiments list the VEGF antagonist along with a ***separate*** buffer. Appx94-95 (2:33-38, 2:53-57, 2:58-62, 2:63-67, 3:1-5, 3:6-10, 3:11-16, 3:36-40, 3:40-43, 3:48-52, 3:53-57, 3:66-4:2, 4:2-6, 4:11-19, 4:22-26, 4:31-35, 4:36-40, 4:40-44, 4:45-48, 4:48-53, 4:54-58, 4:58-62). In twenty of those additional embodiments, the buffer is "phosphate." Appx94-95. In the other two, the buffer is described more generically as a "buffering agent," with no suggestion that the VEGF antagonist itself could be the buffering agent. Appx94 (2:34-37, 3:11-16).

## II. THE PARTIES' PRODUCTS

### A. Regeneron's Eylea

In November 2011, Regeneron obtained FDA approval to market Eylea, its commercial embodiment of the '865 patent. Appx9649-50 (¶33); Appx9653 (¶42). Eylea is now available in both vials and pre-filled syringes. Appx9649 (¶33). It includes the following components:

| Eylea (Regeneron) | |
|---|---|
| **Component** | **Function** |
| **Active Ingredient** | |
| aflibercept | active ingredient |
| **Excipients** | |
| sodium phosphate | buffering agent |
| sodium chloride | tonicity agent |
| sucrose | stabilizing agent |
| polysorbate 20 | organic co-solvent |

Appx4859-60 (¶428).

### B. Amgen's ABP 938

Meanwhile, Amgen innovated over Eylea and the '865 patent. Leveraging years of research, Amgen developed a "buffer-free" formulation of aflibercept that avoids the need for a separate buffer. Appx12909-10 (¶¶110-111). Amgen discovered that, if the aflibercept is prepared and formulated with a specific process, the protein itself has sufficient buffering capacity to maintain pH stability over long periods of time, eliminating the need for a separate buffer. Appx12922-24 (¶¶133-136). Amgen's formulation does not merely dispense with the need for a separate buffer; it also improves overall stability, providing a longer shelf life than Eylea. Appx12992-94 (¶¶276-281). Amgen's innovative formulation is the subject of an Amgen patent application. Appx14741-42.

Based on that work, Amgen filed a Biologics License Application ("BLA") with the FDA on August 23, 2023, seeking to market a biosimilar formulation of

aflibercept, ABP 938 (now branded as "Pavblu"). Appx24149 (¶20). As disclosed in the BLA, ABP 938 contains the following components:

| ABP 938 (Amgen) | |
|---|---|
| **Component** | **Function** |
| **Active Ingredient** | |
| aflibercept | active ingredient |
| **Excipients** | |
| sucrose | stabilizing agent and tonicity modifier |
| α,α-trehalose dihydrate | stabilizing agent and tonicity modifier |
| polysorbate 80 | surfactant |
| water for injection | aqueous solvent |

Appx24205; Appx24316. As the table makes clear, unlike Eylea, ABP 938 lacks a separate buffer. Rather, the active ingredient itself maintains the necessary pH stability. Appx12922-24 (¶¶133-136). The FDA approved ABP 938 on August 23, 2024, Appx26703-09, making it "the first FDA-approved ***buffer-free*** fusion protein formulation," Appx66 (emphasis added).

### C. Other Biosimilars

Other pharmaceutical companies—Mylan, Formycon, Samsung Bioepis, and Celltrion—developed their own biosimilar versions of Eylea. Unlike Amgen's ABP 938, however, those other biosimilars all follow the '865 patent's approach of including a separate excipient buffer—in one case a phosphate buffer like Eylea's, and in other cases a histidine buffer:

| Claim Elements | Regeneron EYLEA | Mylan YESAFILI | Formycon FYB203 | SB OPUVIZ | Celltrion CT-P42 | Amgen ABP 938 |
|---|---|---|---|---|---|---|
| | **Active Ingredient** | | | | | |
| **VEGF Antagonist** | 40 mg/ml aflibercept | 40 mg/ml aflibercept | 40 mg/ml aflibercept | 40 mg/ml aflibercept | 40 mg/ml aflibercept | 40 mg/ml aflibercept |
| | **Excipients (*i.e.*, Ingredients Other than the Active Ingredient)** | | | | | |
| **Organic Co-Solvent** | Polysorbate 20 | Polysorbate 20 | Polysorbate 20 | Polysorbate 20 | Polysorbate 20 | Polysorbate 80 |
| **Buffer** | Phosphate buffer | Histidine buffer | Histidine buffer | Phosphate Buffer | Histidine buffer | **NONE** |
| **Stabilizing Agent** | Sucrose | Trehalose | Sucrose | Sucrose | Trehalose | Sucrose / Trehalose |

Appx12688; Appx9-10.

## III. REGENERON'S SUITS AGAINST OTHER BIOSIMILARS

Regeneron filed infringement suits against the four biosimilars with separate buffers, and then later filed suit against Amgen too.

### A. Regeneron's Suit Against Mylan

On August 2, 2022, Regeneron sued Mylan in the Northern District of West Virginia. *See Regeneron Pharms., Inc. v. Mylan Pharms. Inc.*, No. 1:22-cv-61 (N.D.W. Va.). Mylan challenged the '865 patent for lack of written description and enablement, urging that the claims covered innumerable formulations described only in functional terms. *See Regeneron Pharms., Inc. v. Mylan Pharms. Inc.*, 714 F. Supp. 3d 652, 751-54 (N.D.W. Va. 2024). Regeneron responded by emphasizing the patent's strict "structural," rather than functional, limitations:

> Our claim . . . is ***full of structural limitation***. It has to have aflibercept. That's a structure. Organic cosolvent. Buffer. Stabilizing agent. ***Those are all structures that limit what formulations are in the claim. If you don't have an organic cosolvent or a buffer, you're out of our claim.***

Appx13400 (emphasis added). Regeneron's expert urged that the "asserted claims are 'narrow' rather than broad, because they claim 'one specific biologic molecule' . . . and ***further claim specific structural components including a buffer***, stabilizing agent, and the organic co-solvent." *Mylan*, 714 F. Supp. 3d at 754 (emphasis added); *see also id.* at 751 (urging that claims have " 'common structural features,' including the 'very specific' VEGF antagonist ***and*** the categories of organic co-solvent, buffer, and stabilizing agent" (emphasis added)).

Regeneron repeatedly described the "buffer" as an "excipient" (*i.e.*, a substance other than the active pharmaceutical ingredient, Appx12889 (¶77)). Regeneron's proposed findings stated that "[t]he ***excipients*** recited in the claims" were "the buffer and stabilizing agent." Appx13330 (¶452) (emphasis added). They stated that the patent "lists examples and amounts of stabilizing agent and ***buffer excipients***." Appx13142 (¶80) (emphasis added). And they explained that "the prior art taught 'how to substitute one ***excipient*** in a category, such as a stabilizing agent ***or buffer***, for another' " excipient in the same category. Appx13176 (¶147) (emphasis added).

After a two-week bench trial in June 2023, the district court held that Mylan's product infringed the '865 patent and that the patent was not invalid on the theories asserted in that case. *Mylan*, 714 F. Supp. 3d at 790. The court granted a permanent injunction. *See In re Aflibercept Pat. Litig.*, No. 1:22-cv-61, 2024 WL 3177913

(N.D.W. Va. June 21, 2024). Mylan appealed, and this Court has expedited the appeal. No. 2024-2002.

### B. Regeneron's Suit Against Formycon

On November 29, 2023, Regeneron sued Formycon in the Northern District of West Virginia. *See Regeneron Pharms., Inc. v. Formycon AG*, No. 1:23-cv-97 (N.D.W. Va.). Formycon's product uses a histidine buffer. Appx9-10. A histidine buffer is an excipient, like phosphate, that can be added to establish and maintain the pH of a formulation. Appx12971-72 (¶229). The parties disputed whether the '865 patent covers histidine buffers. Formycon urged that, because the specification discloses only "phosphate" buffers, the term "buffer" should be construed to include only "a phosphate buffer, and not any other type of buffer." Appx26.

Regeneron proposed a broader construction. Just a few months earlier, Regeneron had learned the confidential details of Amgen's buffer-free product. *Compare* Appx26963 (¶10) (Amgen disclosures on September 18, 2023), *with Formycon* Dkt.101 (Regeneron filing on February 22, 2024). Regeneron proposed to define the term "buffer" in the *Formycon* case as any "substance that resists changes to pH upon addition of an acid or base within an optimal pH range through a proton-donating component and/or a proton-accepting component, including, for example, histidine, phosphate, and ***proteins like aflibercept***." Appx26 (emphasis added). Regeneron proposed that "proteins like aflibercept" language even though

Formycon's product has a separate histidine buffer (an amino acid, not a protein, Appx12885 (¶69)), and even though Regeneron's proposal already separately mentioned "histidine." Appx9-10; Appx26. Regeneron submitted its proposal in a sealed filing to which Amgen had no access at the time. *See In re Aflibercept Pat. Litig. ("Formycon")*, No. 1:23-cv-97, 2024 WL 3423047, at *15 (N.D.W. Va. July 9, 2024) (citing Dkt.101-4). The district court adopted Regeneron's proposal as its preliminary construction. Appx26.

On June 21, 2024, the district court granted a preliminary injunction, finding that Formycon's product likely infringed the '865 patent. *See Formycon*, 2024 WL 3423047, at *58. With respect to the "buffer" limitation, the court relied solely on Formycon's histidine buffer, not the "proteins like aflibercept" language. *Id.* at *19. Formycon appealed, and this Court has scheduled argument for December 5, 2024. No. 2024-2009.

### C. Regeneron's Other Suits

Regeneron also filed suits against Samsung Bioepis and Celltrion, the other two biosimilars that use separate excipient buffers. Appx8-10. The district court granted preliminary injunctions in both cases. Appx10-11. Both defendants have appealed. *See* No. 2024-2058 (Celltrion); No. 2024-1965 (Samsung Bioepis).

## IV. PROCEEDINGS IN THIS CASE

### A. Regeneron's Suit Against Amgen

On January 10, 2024, Regeneron sued Amgen in the Central District of California. Appx203. On April 11, 2024, the Judicial Panel on Multidistrict Litigation granted Regeneron's motion to transfer the case for pretrial purposes to the Northern District of West Virginia, where Regeneron's suits against the other biosimilar manufacturers were pending. Appx3986-90.

On June 7, 2024, Regeneron moved for a preliminary injunction, asserting that ABP 938 infringed claims 2, 3, 27, and 28 of the '865 patent. Appx4203; Appx4217. The parties submitted briefs and detailed expert declarations that spanned thousands of pages with exhibits. Appx12-13; *see, e.g.*, Appx12833; Appx19583. The district court also heard oral argument. Appx26599.

### B. The District Court's Decision

The district court denied Regeneron's motion for a preliminary injunction. Appx1. In a thorough 90-page opinion, the court held that Regeneron had not shown a likelihood of infringement because ABP 938 lacks the separate "buffer" required by the asserted claims. Appx79-81.

Citing *Becton, Dickinson & Co. v. Tyco Healthcare Group LP*, 616 F.3d 1249 (Fed. Cir. 2010), the district court explained that, where a claim lists separate elements, it is ***presumed*** to require a separate and distinct component for each element. Appx36-37. Here, the asserted claims list four separate elements, each on

a separate line: (1) a VEGF antagonist; (2) an organic co-solvent; (3) a buffer; and (4) a stabilizing agent. The claims are thus presumed to require four distinct components. Appx36-37. Regeneron did not dispute that point below: "The parties' dispute [was] not whether the claims list these four elements separately, or whether the presumption applies, but whether this presumption is rebutted by the evidence of record." Appx37. Moreover, "[t]here [was] no dispute that ABP 938 does not contain 'a buffer' that is separate from the other components listed in the claims, namely, the VEGF antagonist." Appx81. The district court thus analyzed whether Regeneron could overcome the *Becton* presumption, such that the same component could be both the "VEGF antagonist" and the "buffer."

The district court found that Regeneron failed to overcome the *Becton* presumption. Nothing in the intrinsic record suggested that the claims encompass formulations in which the VEGF antagonist and the buffer are one and the same. Appx37-57. To the contrary, every example and every embodiment in the specification includes a buffer ***separate*** from the VEGF antagonist. Appx37-57.

Given that "clear and unambiguous" intrinsic record, the district court saw no reason to consider extrinsic evidence. Appx61. But that evidence, too, supported Amgen. Appx62-77. The court found that "the evidence does not show that aflibercept was known as (or understood to be) a buffer in a pharmaceutical composition during the relevant timeframe." Appx66. While Regeneron cited

scientific articles disclosing that some proteins had buffering properties, the court found that none of the articles involved the use of proteins (much less aflibercept) as a buffer ***in a pharmaceutical formulation***—instead, they involved unrelated contexts such as "vertebrate muscles" and "horse oxyhemoglobin." Appx63-64. Regeneron cited one Amgen patent application—Gokarn—as support in the context of a pharmaceutical formulation. But the court held that Gokarn was "not available, as a matter of law, as extrinsic evidence of how a POSA would have interpreted the '865 patent" because Gokarn was not published until ***after*** the patent's priority date. Appx64-70.

The district court also specifically rejected Regeneron's argument that its ruling conflicted with its earlier decision in *Formycon*. Appx26-27. The court acknowledged that it had construed "buffer" in *Formycon* as "a substance that resists changes to pH . . . including, for example, histidine, phosphate, and proteins like aflibercept." Appx26. But *Formycon* did not address the *Becton* issue—*i.e.*, whether the claims require four separate components. There was no need to address that issue in *Formycon* because "Formycon's product contains a separate histidine buffer." Appx26. As a result, "in *Formycon*, the Court did not address the claim construction issue that Amgen raises in this case." Appx27.

Having resolved the *Becton* issue in Amgen's favor, the district court did not resolve the separate dispute over *Formycon*'s preliminary construction—whether

the term "buffer" covers ***any*** substance that resists changes to pH, even "proteins like aflibercept." Appx78-79. "Having determined that the claims require a 'buffer' that is separate from the 'VEGF antagonist,'" the court explained that it "need not address the proposed constructions of the term 'buffer.'" Appx78.

## SUMMARY OF ARGUMENT

I. The district court correctly held that the '865 patent covers only formulations with a buffer that is separate from the VEGF antagonist. This Court's decision in *Becton, Dickinson & Co. v. Tyco Healthcare Group LP*, 616 F.3d 1249 (Fed. Cir. 2010), is clear: "Where a claim lists elements separately, 'the ***clear implication*** of the claim language' is that those elements are 'distinct component[s]' of the patented invention." *Id.* at 1254 (emphasis added). *Becton* establishes a "presumption" that separately listed components are "distinct." *Kyocera Senco Indus. Tools Inc. v. ITC*, 22 F.4th 1369, 1382 (Fed. Cir. 2022). The '865 patent contains precisely the sort of separately listed claim elements that give rise to that presumption. The claims list four separate elements—a "[VEGF] antagonist," an "organic co-solvent," a "buffer," and a "stabilizing agent"—each on a separate line. Appx103 (19:29-34). Under *Becton*, those separately listed elements are ***presumed*** to require separate components.

The district court correctly found that nothing in the '865 patent's claims or specification rebuts the *Becton* presumption. The patent describes the VEGF

antagonist and the buffer as distinct components. ***Every*** example and ***every*** embodiment discloses a VEGF antagonist plus a ***separate*** buffer. Appx94-99 (2:33-4:62, 8:32-12:26).

Given that clear intrinsic record, there is no need to consider extrinsic evidence. The specification is "the single best guide to the meaning of a disputed term" and is usually "dispositive." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc). But the extrinsic evidence supports Amgen in any event. Regeneron cannot show the clear error necessary to reverse the district court's findings on that issue—it does not even attempt to do so.

II.A. Regeneron's attempt to manufacture a conflict with the district court's prior ruling in *Formycon* is both unavailing and irrelevant. As the district court explained, this case and *Formycon* turned on different issues. In this case, the district court applied *Becton* to hold that the '865 patent requires a buffer that is ***separate from*** the VEGF antagonist. That requirement of a ***separate*** buffer is distinct from the issue the court addressed in *Formycon*—the ***scope*** of the term "buffer." Whether or not "proteins like aflibercept" ***could*** be a "buffer" is beside the point here. What matters is that the '865 patent does not claim formulations in which the ***same*** component acts as both the VEGF antagonist ***and*** the buffer.

Regeneron's argument that the district court was required to construe the term "buffer" before applying *Becton* is wrong. A court is not required to resolve every

claim construction dispute when ruling on a motion. It need only construe terms to the extent necessary to decide the motion. Here, the court correctly construed the ’865 patent claims to require a ***separate*** buffer. That ruling was sufficient to decide the motion, regardless of the ***scope*** of the term “buffer.”

*Formycon*’s preliminary claim construction warrants no weight here regardless. Amgen was not a party to that case and did not have access to the sealed filings. The “proteins like aflibercept” language was not the ground for decision in that case and was at best only marginally relevant: Formycon’s product used a separate histidine buffer. Regeneron proposed the “proteins like aflibercept” language in its sealed briefing in *Formycon* only after learning of Amgen’s confidential information. Besides, any tension between the district court’s decision in *Formycon* and its decision here would not be grounds for reversal. The court’s exhaustive analysis makes clear that the decision in this case is the correct one.

B. Regeneron fares no better when it finally engages with this Court’s precedents. Advancing a new theory on appeal, Regeneron urges that the *Becton* presumption does not apply whenever the claim elements, as construed by the court, have “overlapping scope.” That theory would render the *Becton* presumption pointless. Where it is not even ***possible*** for a single component to satisfy multiple elements, there is no need for any presumption. The *Becton* presumption matters only when claim elements ***could*** overlap: Only then is it necessary to ask whether

the inventors ***claimed*** products in which a single component performs double duty. The *Becton* presumption is straightforward: Where a claim lists elements separately, those elements are ***presumed*** to require separate components—even if it is physically possible to create a product in which a single component could meet multiple elements as construed by the court.

C. Regeneron's attempt to overcome the *Becton* presumption likewise fails. In the district court, Regeneron made only the slenderest effort to show that the intrinsic record overcomes the presumption, and Regeneron abandons that argument on appeal. Regeneron's erroneous arguments for why the *Becton* presumption should not apply in the first place are no substitute for actual support from the intrinsic record. And Regeneron's arguments based on extrinsic evidence come nowhere close to showing that the district court's findings were erroneous, much less clearly so. The evidence showed convincingly that skilled artisans would not have understood aflibercept to be a "buffer" in a pharmaceutical formulation during the relevant timeframe.

III. Regeneron's expansive construction of the claims dooms its case for another reason: It would render the claims invalid for lack of written description. Where a patent claims a broad genus, the specification must provide written description support for the full range of the claim—it cannot describe only a subset of the species while ignoring the vast range of others that are qualitatively different.

The specification mentions exactly ***one*** buffer: phosphate. It provides no disclosure whatsoever of any protein acting as a buffer, much less the active protein aflibercept. Nor does it disclose the conditions under which aflibercept or any other protein could serve as a buffer, or the process necessary to permit aflibercept to provide sufficient buffering capacity. That omission is not surprising: No one had even conceived of this approach until Amgen invented it.

IV. Because the district court held that the ’865 patent requires a buffer that is ***separate from*** the VEGF antagonist, the court properly declined to decide whether the term “buffer” includes ***any*** substance that resists pH changes, even “proteins like aflibercept.” This Court need not decide that issue either. But if it does, the Court should reject Regeneron’s interpretation. Nothing in the intrinsic record or the extrinsic evidence remotely supports Regeneron’s construction of “buffer.”

V. The ’865 patent is also invalid for obviousness-type double patenting. An earlier Regeneron patent—the ’594 patent—claims the same Eylea formulation that the ’865 patent claims. The ’594 patent expired in 2021 due to a terminal disclaimer. Double patenting principles preclude Regeneron from prolonging its exclusivity by claiming essentially the same invention in a later-expiring patent.

VI. Finally, the Court should direct the district court to determine on remand the damages that Amgen suffered from the temporary injunction and to grant appropriate relief.

## STANDARD OF REVIEW

This Court reviews the denial of a preliminary injunction for abuse of discretion. *See Natera, Inc. v. NeoGenomics Labs., Inc.*, 106 F.4th 1369, 1375 (Fed. Cir. 2024). Although the Court "review[s] a district court's ultimate claim construction and its interpretations of intrinsic evidence de novo," it reviews "any subsidiary fact findings about extrinsic evidence for clear error." *Forest Labs., LLC v. Sigmapharm Labs., LLC*, 918 F.3d 928, 932-33, 938 (Fed. Cir. 2019). A factual finding is "clearly erroneous" only if the Court is "left with the definite and firm conviction that a mistake has been made." *Endo Pharms. Inc. v. Actavis LLC*, 922 F.3d 1365, 1371 (Fed. Cir. 2019). "Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous." *Genentech, Inc. v. Sandoz Inc.*, 55 F.4th 1368, 1376 (Fed. Cir. 2022).

## ARGUMENT

A preliminary injunction is a "drastic and extraordinary remedy that is not to be routinely granted." *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993). The patentee must show (1) a likelihood of success on the merits; (2) irreparable harm; (3) a balance of hardships in its favor; and (4) that the public interest favors an injunction. *Id.* Where a plaintiff fails to show likelihood of success, the court "need not address the remaining preliminary injunction factors." *DexCom, Inc. v. Abbott Diabetes Care, Inc.*, 89 F.4th 1370, 1377 (Fed. Cir. 2024).

To defeat a likelihood of success, the defendant need only "raise[] a ***substantial question*** regarding . . . infringement." *Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 630 (Fed. Cir. 2015) (emphasis added); *see also Metalcraft of Mayville, Inc. v. Toro Co.*, 848 F.3d 1358, 1364 (Fed. Cir. 2017).

The district court correctly applied this Court's precedents to hold that Regeneron has not shown a likelihood of proving infringement. The '865 patent requires ***four*** separate components. Under established claim construction principles, Amgen's formulation containing only ***three*** of those separate components does not infringe. Regeneron's effort to rewrite this Court's precedents would render them meaningless. And Regeneron's new expansive view of its claims not only contradicts positions it previously took when defending the claims' validity; it would also render the claims invalid for want of written description. Regeneron seeks to expand its claims to encompass not just what its own inventors conceived, but also what ***Amgen*** invented. The district court correctly rejected those arguments. This Court should affirm.

## I. THE DISTRICT COURT PROPERLY APPLIED THE *BECTON* PRESUMPTION

The '865 patent separately lists four distinct structural elements, each on a separate line: (1) a VEGF antagonist (aflibercept); (2) an organic co-solvent; (3) a buffer; and (4) a stabilizing agent. Appx103 (19:29-34). As the district court recognized, "there is ***no dispute*** that ABP 938 does not contain a separate buffer."

Appx79 (emphasis added). That absence of a separate buffer precludes Regeneron from showing infringement: Amgen's ***three***-component formulation does not infringe Regeneron's ***four***-element claim.

### A. *Becton* Establishes a Presumption that Separately Recited Claim Elements Require Separate and Distinct Components

This Court's decision in *Becton, Dickinson & Co. v. Tyco Healthcare Group LP*, 616 F.3d 1249 (Fed. Cir. 2010), announces a clear rule: "Where a claim lists elements separately, 'the ***clear implication*** of the claim language' is that those elements are '***distinct component[s]***' of the patented invention." *Id.* at 1254 (emphasis added). *Becton* establishes a "***presumption*** that . . . components are distinct" when "[t]he asserted claims list . . . elements separately." *Kyocera Senco Indus. Tools Inc. v. ITC*, 22 F.4th 1369, 1382 (Fed. Cir. 2022) (emphasis added).

Applying that rule, this Court has repeatedly held that, where claims recite elements separately, those elements presumptively cannot be satisfied by a single component in the accused product. In *Becton* itself, for example, the patent claimed a safety shield for a needle with four specific structural elements: a "needle cannula," a "guard," a "hinged arm," and a "spring means." 616 F.3d at 1254. The district court held that the accused product could infringe, even without a separate "hinged arm" and "spring means," so long as a single component met the requirements of ***both*** elements. *Id.* at 1251.

This Court reversed. Because the claim "list[ed] elements separately," the Court held, "'the clear implication of the claim language' is that those elements are 'distinct component[s]' of the patented invention." *Becton*, 616 F.3d at 1254. Nothing in the intrinsic record overcame that presumption. No claim language "suggest[ed] that the hinged arm and the spring means can be the same structure." *Id.* Nor did anything in the specification: "[T]he only elements disclosed in the specification as 'spring means' . . . are separate structures from the hinged arm and its hinges." *Id.*

This Court applied that presumption again in *Kyocera*. There, the patent claimed a tool with a "safety contact element" and an "exit end of the mechanism." 22 F.4th at 1382. The Court held that, because "[t]he asserted claims list those elements separately," "[t]here is . . . a presumption that those components are distinct." *Id.* The court found no "claim language overcoming the presumption." *Id.* And there was no "language in the written description that overcomes that presumption" either. *Id.*

Similarly, in *HTC Corp. v. Cellular Communications Equipment, LLC*, 701 F. App'x 978 (Fed. Cir. 2017), the Court held that "[t]he separate naming of two structures in the claim strongly implies that the named entities are not one and the same structure." *Id.* at 982. And in *Google LLC v. EcoFactor, Inc.*, 92 F.4th 1049 (Fed. Cir. 2024), the Court reaffirmed that "there is a 'presumption' that separately

listed claim limitations may indicate separate and distinct physical structure." *Id.* at 1058. *Google* cautioned that *Becton* did not "create a *per se* rule" and found the claim language and specification at issue there sufficient to overcome the presumption. *Id.* at 1057-59. But the Court nowhere cast doubt on the existence of the presumption in the first place.

Judge Bryson's decision in *Sun Pharmaceutical Industries Ltd. v. Saptalis Pharmaceuticals, LLC*, No. 18-cv-648, 2019 WL 2549267 (D. Del. June 19, 2019), illustrates the rule particularly well. There, the patent claimed a pharmaceutical formulation with both a "sweetener" and a "polyhydroxy alcohol." *Id.* at *1. The plaintiff argued that the accused product infringed because it contained an ingredient that acted as ***both*** a sweetener ***and*** a polyhydroxy alcohol. *Id.* at *6. Judge Bryson disagreed. "In the claims," he explained, "the polyhydroxy alcohol and sweetener are consistently referred to as distinct ingredients." *Id.* Nothing in the specification overcame that presumption: "[E]very exemplary formulation . . . includes at least one sweetener and at least one separate polyhydroxy alcohol." *Id.* The patent therefore required that those two components be distinct.

### B. The District Court Properly Applied *Becton*

The district court properly rejected Regeneron's argument that the aflibercept in Amgen's ABP 938 formulation can satisfy both the "VEGF antagonist" element

and the separately recited "buffer" element. This Court's precedents foreclose that one-component-satisfies-two-elements theory.

The '865 patent is crystal clear. It recites a formulation with ***four*** distinct elements:

> A vial comprising an ophthalmic formulation suitable for intravitreal administration that comprises:
>
> [a] a vascular endothelial growth factor (VEGF) antagonist [*i.e.*, aflibercept,]
>
> [b] an organic co-solvent,
>
> [c] a buffer, and
>
> [d] a stabilizing agent . . . .

Appx103 (19:29-34). The claims do not merely recite each element separately—they set forth each element on a separate line. Appx103 (19:29-34). That is precisely the sort of "claim [that] lists elements separately" to which the *Becton* presumption applies. 616 F.3d at 1254.

Regeneron previously read its claims the same way. In its opening statement in the *Mylan* trial, Regeneron urged:

> Our claim . . . is ***full of structural limitation***. It has to have aflibercept. That's a structure. Organic cosolvent. Buffer. Stabilizing agent. ***Those are all structures that limit what formulations are in the claim. If you don't have an organic cosolvent or a buffer, you're out of our claim.***

Appx13400 (emphasis added). Regeneron's expert insisted that the claims were "narrow" for that reason: They "claim 'one specific biologic molecule' . . . and ***further claim specific structural components including a buffer***, stabilizing agent,

and the organic co-solvent." *Mylan*, 714 F. Supp. 3d at 754 (emphasis added). Only after learning about Amgen's buffer-free formulation did Regeneron switch positions.

The district court properly rejected Regeneron's attempt to overcome the *Becton* presumption. The intrinsic record, it held, is "clear and unambiguous." Appx61. The claims contain no hint that the VEGF antagonist itself could play the role of the buffer. Appx37-44; Appx103-04. Certain dependent claims specify concentrations that ***preclude*** the VEGF antagonist from acting as the buffer too. Appx40-42 (citing Appx12941 (¶171)).

The specification confirms that the VEGF antagonist and the buffer are separate components. Appx44-57. As the district court noted, the specification describes the VEGF antagonist as the therapeutic active ingredient and never once suggests that "the VEGF antagonist can be a buffer or vice versa." Appx45 (citing Appx96 (6:27-30)). ***Every one*** of the eight examples and ***every one*** of the twenty-two other embodiments has a VEGF antagonist ***plus*** a separate buffer. Appx45-46 (citing Appx94-99 (2:33-4:62, 8:32-12:26)). In all but two embodiments, the buffer is "phosphate"—not aflibercept or any other "protein like aflibercept." Appx45-46. In the remaining two embodiments, the patent specifies concentrations for the VEGF antagonist and the buffer that are ***mutually inconsistent***, precluding a single substance from acting as both. Appx46-47 (citing Appx12941 (¶171)). Regeneron

does not dispute any of those points. Nothing in the specification remotely hints that the VEGF antagonist can also be the buffer.

Because the "clear and unambiguous" intrinsic record fails to overcome the *Becton* presumption, there is no need to consider extrinsic evidence. Appx61. The specification is "the single best guide to the meaning of a disputed term" and is usually "dispositive." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc). But "for completeness," the district court examined the extrinsic evidence anyway, and found that it supported Amgen too. Appx62-77. That evidence showed that aflibercept was not "known as (or understood to be) a buffer in a pharmaceutical composition during the relevant timeframe." Appx66. Regeneron does not remotely show clear error in those findings.

## II. REGENERON'S CONTRARY ARGUMENTS ARE MERITLESS

### A. The District Court's Preliminary Claim Construction in *Formycon* Is Irrelevant

Regeneron's lead argument on appeal is not that the district court's decision departs from ***this Court's*** precedents. Regeneron argues instead that the district court's decision conflicts with that court's ***own*** preliminary claim construction in a different case against Formycon, where the court construed "buffer" to mean any "substance that resists changes to pH . . . including, for example, histidine, phosphate, and proteins like aflibercept." Appx26. But *Formycon* did not involve whether a single component could satisfy two separate claim elements. And the

district court's preliminary construction in that different case is entitled to no weight here regardless.

### 1. *Formycon Addressed a Different Issue*

The decision below does not "facially contradict[ ]" the district court's preliminary claim construction in *Formycon*. Regeneron Br. 31. The two cases turned on different issues and are entirely consistent.

*Formycon* did not involve whether a single component in a formulation could satisfy two separately listed claim elements. Formycon's formulation included four separate components—including a histidine buffer that was separate from the VEGF antagonist. Appx9-10. The dispute in *Formycon* was whether the '865 patent covers formulations where the buffer is histidine rather than phosphate (the only buffer the patent mentions). Appx26. The district court preliminarily adopted Regeneron's construction that the term "buffer" means any "substance that resists changes to pH . . . including, for example, histidine, phosphate, and proteins like aflibercept." Appx26. But the court never applied *Becton* and had no reason to do so. There was no dispute that, ***if*** the patent covers histidine buffers, Formycon's product contained a buffer that was ***separate from*** the VEGF antagonist.

This case turns on a fundamentally different issue. The district court denied a preliminary injunction because, under *Becton*, the '865 patent requires four separate components—one component cannot satisfy two different claim elements.

Appx33-77. *Becton*'s separate component requirement is logically distinct from whether "proteins like aflibercept" can be buffers. Even if an aflibercept-like protein ***could*** act as a buffer, that would not mean that the '865 patent claims formulations that lack a ***separate*** buffer—in other words, formulations in which a single component allegedly acts as ***both*** the "VEGF antagonist" ***and*** the separately recited "buffer." Those issues are distinct. For example, a hypothetical formulation that used aflibercept as the VEGF antagonist and some ***other*** "protein like aflibercept" as the buffer might infringe under the district court's *Formycon* ruling. But *Becton* would still preclude a finding of infringement where the formulation uses the ***same*** component, aflibercept, as ***both*** the VEGF antagonist ***and*** the buffer.

The district court thus recognized that *Formycon* "did not address the claim construction issue" that proved dispositive here. Appx27. That is why, after spending 44 pages addressing the *Becton* issue, the court held that it "***need not address*** [Regeneron's] proposed construction[] of the term 'buffer'" to include "proteins like aflibercept." Appx78 (emphasis added).

### 2. *The District Court Was Not Required To Engage in Unnecessary Claim Construction*

Regeneron insists that the district court "committed legal error by failing to consider the meaning" of the term "buffer" before applying *Becton*. Regeneron Br. 31. But a court is not required to construe every claim term when deciding a motion. Instead, the court need only "construe[] [terms] . . . to the extent necessary to resolve

the controversy." *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999); *see also Promptu Sys. Corp. v. Comcast Corp.*, 92 F.4th 1372, 1380 (Fed. Cir. 2024) (courts "are not (and should not be) required to construe every limitation present in a patent's asserted claims"); *GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1372-73 (Fed. Cir. 2016) (no error where "the district court's construction was sufficient to resolve the parties' dispute").

Here, the district court engaged in claim construction sufficient to resolve the dispute. Applying *Becton*, the court construed the claims to require a "buffer" that is ***separate from*** the "VEGF antagonist." Appx33-77. That construction was dispositive because "[t]here is no dispute that ABP 938 does not contain 'a buffer' that is separate from the other components listed in the claims, namely, the VEGF antagonist." Appx81. Because the court construed the claims to require a ***separate*** buffer, and Amgen's product indisputably lacks a separate buffer, there was no need for the court to resolve other claim construction questions, such as the ***scope*** of the term "buffer."

#### 3. *Formycon's Preliminary Claim Construction Is Entitled to No Weight in This Case*

Regeneron's reliance on *Formycon* fails for another reason—the preliminary claim construction in that case is neither binding nor persuasive here. Regeneron proposed its "proteins like aflibercept" language in a case to which Amgen was not

a party, in a ***sealed filing*** to which Amgen had no access. And Regeneron did so even though Formycon's product concededly used a separate histidine buffer.

It is "fundamental" that a litigant ordinarily "is not bound by a judgment to which [it] was not a party." *Taylor v. Sturgell*, 553 U.S. 880, 898 (2008). Amgen was not a party to Regeneron's suit against Formycon and thus cannot be bound to questions decided there, under issue preclusion or any other theory. Indeed, Regeneron ***conceded*** that "*Formycon* is not binding on Amgen" in its proposed order below. Appx26751.

Regeneron's attempts to grant *Formycon* "stare decisis" effect are misplaced. Regeneron Br. 32-33. District court decisions have no stare decisis effect. *See Am. Silicon Techs. v. United States*, 261 F.3d 1371, 1381 (Fed. Cir. 2001). Still less do they bind ***this*** Court: If the decision below is correct, this Court must affirm, regardless of any supposed inconsistency with *Formycon*.

Granting preclusive effect to *Formycon* would be particularly perverse here. The submission in which Regeneron made its "proteins like aflibercept" argument was filed ***under seal***. *See Formycon*, 2024 WL 3423047, at *15 (citing Dkt.101-4). Amgen had no access to that sealed filing at the time, and even now, Amgen has only an incomplete record of redacted filings. It would offend basic principles of procedural fairness to reverse the district court's decision in Amgen's favor based on a ruling in another case where Amgen could not even access the relevant filings.

Regeneron urges the Court to ignore the separate status of the two cases on the ground that they were consolidated in a multidistrict litigation proceeding. Regeneron Br. 31-32. But the Supreme Court has made clear that "[c]ases consolidated for MDL pretrial proceedings ordinarily retain their separate identities." *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 (2015). Preclusion doctrines therefore "cannot be applied across distinct actions in [a] multidistrict proceeding." *Home Depot USA, Inc. v. Lafarge N. Am., Inc.*, 59 F.4th 55, 61 (3d Cir. 2023); *see also In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 845 (6th Cir. 2020). Here, moreover, the sealing orders meant that the individual cases were effectively "siloed" from each other. *Formycon* Dkt.100 at 6-7. Regeneron's authorities stating that MDL proceedings may promote more consistent claim constructions reflect the practical reality that having the same judge preside over the cases may promote consistency. Regeneron Br. 31-32. That does not mean that the court should or must grant preclusive effects to its rulings across different cases.

Those defects are just the tip of the iceberg—there are other reasons why *Formycon* has no bearing here. ***First***, Regeneron proposed its "proteins like aflibercept" language in *Formycon* only after learning the confidential details of ***Amgen's*** formulation just months earlier. Appx26963 (¶10); *Formycon*, 2024 WL 3423047, at *15 (citing Dkt.101-4). Regeneron proposed that language even though Formycon concededly used a separate histidine buffer, and even though Regeneron's

proposed language already separately listed "histidine." Appx9-10; Appx26. Once the district court construed "buffer" to include "histidine," that element was satisfied, whether or not "proteins like aflibercept" were also buffers. Regeneron is thus relying on gratuitous language it procured in another case where the language had little if any relevance—and where Amgen had no opportunity to respond.

***Second***, *Formycon* involved a ***preliminary*** claim construction on a motion for a preliminary injunction. Appx26. A preliminary construction "is tentative and is not binding on the district court in subsequent proceedings." *Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1302 (Fed. Cir. 2012); *see also Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1377 (Fed. Cir. 2005) (court may "revisit[] and alter[] its interpretation"). Because the *Formycon* construction was not binding even in Formycon's own case, it cannot bind the district court (much less this Court) in Amgen's ***separate*** case.

***Finally***, it is unclear whether ***Formycon itself*** had any adequate opportunity to dispute this issue. Formycon argues on appeal that the district court granted a preliminary injunction after only limited briefing. *See* Formycon Br. in No. 2024-2009, at 51-57. The "buffer" dispute in particular was "never—or barely—raised in the parties' briefing." *Id.* at 57 n.15. And while Formycon has not challenged the "buffer" ruling on appeal, that omission only underscores how tangential the dispute was in that case.

The district court found it unnecessary to reach any of those issues. Because *Becton* is controlling, the court recognized, the *Formycon* issue is irrelevant. Appx78. This Court should take the same approach. But if this Court does reach the issue, the *Formycon* ruling deserves zero weight.

### B. Regeneron's Efforts To Rewrite *Becton* and Its Progeny Defy This Court's Precedents

When Regeneron finally engages with *Becton*, it advances a brand new theory on appeal that distorts this Court's precedents beyond recognition. According to Regeneron, before applying *Becton*, a court must first construe each of the claim elements and determine whether "the claim terms as construed have overlapping scope." Regeneron Br. 35. If it would be ***physically possible*** for a single component to satisfy multiple elements, Regeneron asserts, *Becton* is "simply inapplicable." *Id.* Regeneron forfeited this theory by not raising it below. *See Ironburg Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274, 1286 (Fed. Cir. 2023).[1] But this Court's precedents flatly contradict Regeneron's theory in any event.

[1] The parties' dispute below was "not . . . whether the [*Becton*] presumption applies, but whether this presumption is rebutted by the evidence of record." Appx37. The hearing transcript excerpt Regeneron cites does not mention *Becton* and bears no resemblance to its new "overlapping scope" theory. Appx26615. While this Court has held that parties may cite additional intrinsic support on appeal for claim constructions advanced below, Regeneron's theory goes far beyond that principle here. *See Medytox, Inc. v. Galderma S.A.*, 71 F.4th 990, 997 (Fed. Cir. 2023).

### 1. *This Court's Cases Foreclose Regeneron's Interpretation*

The *Becton* presumption is designed to permit courts to decide whether a claim that separately recites distinct elements ***requires*** a separate component for each element. *Becton* is a rule of claim construction. The question is not whether it is ***physically possible*** for a single component to satisfy multiple elements. The question is whether the patent discloses an intent to ***claim*** products in which a single component does so.

For that reason, the only predicate to applying the *Becton* presumption is that the claim "lists elements separately"—there is no threshold inquiry into whether it would be ***physically possible*** for one component to perform double duty. *Becton* held that, "[w]here ***a claim lists elements separately***, 'the clear implication of the claim language' is that those elements are 'distinct component[s]' of the patented invention." 616 F.3d at 1254 (emphasis added). *Kyocera* is clearer still: When "[t]he asserted claims ***list . . . elements separately***," "[t]here is . . . a ***presumption*** that those components are distinct." 22 F.4th at 1382 (emphasis added).

In short, the basic question *Becton* seeks to answer is not "Can you make it?" but "Did the inventors claim it?" Regeneron's "overlapping scope" theory confuses that distinction. If the *Becton* presumption applied only where it was ***physically impossible*** for a single component to satisfy two separately recited elements, the presumption would be pointless. No "presumption" is necessary to determine

whether a patent claims products that are physically impossible to create. On Regeneron's theory, the *Becton* presumption would do no work whatsoever.

Regeneron argues that, if a court has previously ***construed*** the claim elements to have some "overlapping scope," *Becton* should not apply. Regeneron Br. 35. But Regeneron cites no authority in support of that argument. Simply having some "overlap" between claim elements, either on the face of the claim terms or in the constructions of the terms, does not address the question *Becton* is designed to answer—whether the inventors intended to ***claim*** formulations that lack a separate component for each separately recited element. If Regeneron has evidence bearing on that issue, it should bring that evidence forward to overcome the *Becton* presumption. Regeneron has none. Its "overlapping scope" argument is just an effort to obscure its inability to identify evidence that the inventors, despite reciting four separate elements, intended to claim formulations in which the "VEGF antagonist" also fills the role of the separately recited "buffer."

Regeneron invokes the passage in *Becton* where the Court observed that the plaintiff's interpretation would render the claims "nonsensical" and "a physical impossibility." 616 F.3d at 1255. But the Court made those observations in a separate, later portion of its opinion, introduced by the word "[i]ndeed," after it had already announced and applied the presumption of separate components. *Id.* That context makes clear that the Court was identifying ***additional*** reasons for rejecting

the plaintiff's construction—not additional threshold criteria for applying the presumption in the first place. Regeneron's argument improperly seeks to transform what was clearly an alternative ground for decision into a new threshold requirement for applying the Court's principal holding.

*Kyocera* is even more clearly inconsistent with Regeneron's theory. The claim elements in *Kyocera* ***did*** "overlap" in the sense that Regeneron uses that term. The claim separately recited (1) a "safety contact element"; and (2) an "exit end of the mechanism" that activated a "driving cycle." *Kyocera*, 22 F.4th at 1374, 1382. The Court noted that "the written description is not uniform" and "arguably discloses multiple embodiments," including one where "a driving cycle is initiated by pressing the ***safety contact element***." *Id.* at 1382 (emphasis added). Thus, the ***specification itself*** showed that it was physically ***possible*** for a single component to perform double duty: It disclosed an embodiment where the "safety contact element" also performed the role of the "exit end of the mechanism" in activating the "driving cycle." Nonetheless, the Court found that lone disclosure insufficient to overcome the *Becton* presumption: "[T]he mere fact that there is an alternative embodiment disclosed in [a] patent that is not encompassed by [a] claim construction does not outweigh the language of the claim." *Id.*

Similarly, in *HTC*, it was physically ***possible*** for the same component to play multiple roles: The patent recited a separate "diverting unit" and "controlling

entity," and two prior art references disclosed devices where the same component performed both roles. 701 F. App'x at 980-81. The Court applied *Becton* regardless, holding that "[t]he separate naming of two structures in the claim strongly implies that the named entities are not one and the same structure." *Id.* at 982.

Judge Bryson's decision in *Sun Pharmaceutical* is especially clear. The patent there recited a formulation with separate "sweetener" and "polyhydroxy alcohol" ingredients. 2019 WL 2549267, at *6. The plaintiff made the exact same argument that Regeneron makes here: "[A] person of skill in the art would understand that the sweetener limitation and the polyhydroxy alcohol limitation 'share overlapping functionality.'" *Id.* Judge Bryson rejected the argument: "The Court recognizes that the relevant claim elements in the '957 patent 'share overlapping functionality' such that a single ingredient ***could*** be both a sweetener and a polyhydroxy alcohol. However, the Court must look beyond the functionality of the claim terms to determine whether the patentee ***intended*** a single ingredient to satisfy both the sweetener and the polyhydroxy alcohol limitations." *Id.* at *7 (citation omitted) (emphasis added). That reasoning is directly on point here.

### 2. *Regeneron's Authorities Are Inapposite*

Regeneron's alternative reading of *Becton* has no support in the cases Regeneron cites. Regeneron Br. 36-39.

For example, in *Google LLC v. EcoFactor, Inc.*, 92 F.4th 1049 (Fed. Cir. 2024), the Court confirmed that *Becton* establishes "a 'presumption' that separately listed claim limitations may indicate separate and distinct physical structure." *Id.* at 1058. Although the Court cautioned that *Becton* does not "create a *per se* rule," *id.*, no one here suggests it does. *Becton* creates a ***presumption***. And *Google* illustrates the sort of facts that might overcome the presumption: There, the claim language itself suggested that a single component could satisfy multiple elements, and the specification disclosed an embodiment where the components were not distinct. *Id.* at 1057-59. There are no similar disclosures here.

In *Retractable Technologies, Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296 (Fed. Cir. 2011), the patent claimed a "retainer member" and a "needle holder," but the claims ***expressly recited*** that the retainer member could be a subcomponent of the needle holder. *Id.* at 1303. The Court did not cite *Becton*; it is unclear whether the Court deemed *Becton* inapplicable because the case did not involve separately listed claim elements, or instead concluded that the claim language refuted any presumption of separate components. Either way, the case does not help Regeneron: The claims here clearly recite four separate elements, and no claim language remotely suggests that one component can be a subcomponent of another.

In *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221 (Fed. Cir. 2011), the patent claimed a separate "cutting box" and "dust collection structure," but the Court

found the *Becton* presumption overcome because "the specification teaches that the cutting box may also function as a 'dust collection structure.'" *Id.* at 1231-32. In *Linear Technology Corp. v. ITC*, 566 F.3d 1049 (Fed. Cir. 2009), the specification expressly depicted an embodiment in which the two structures "share[d] common components." *Id.* at 1055. There is nothing of the sort in the specification here. Regeneron's remaining, largely non-precedential cases are even further afield.[2]

Regeneron's authorities thus are all cases where the Court applied *Becton* but found the presumption overcome by the specification or claim language, or where *Becton* did not apply at all because the claims did not list separate elements. None of the cases supports Regeneron's novel "overlapping scope" theory.

### C. Regeneron Fails To Overcome the *Becton* Presumption

Regeneron's attempt to overcome the *Becton* presumption falls flat—and explains why Regeneron labors so hard to rewrite *Becton* in the first place.

---

[2] In *Los Angeles Biomedical Research Institute v. Eli Lilly*, 849 F.3d 1049 (Fed. Cir. 2017), the patent merely described a treatment regimen in two slightly different ways, as both a "continuous long-term regimen" and a regimen with "a dosage up to 1.5 mg/kg/day for not less than 45 days." *Id.* at 1063. The case did not cite *Becton* and did not involve separately recited claim elements. In *Google LLC v. Personal Audio, LLC*, 743 F. App'x 978 (Fed. Cir. 2018), the Court merely held that two different claim elements could be rendered obvious by the same prior art reference. *Id.* at 985. And in *Cannon Rubber Ltd. v. First Years, Inc.*, 163 F. App'x 870 (Fed. Cir. 2005), which predates *Becton*, the Court found any presumption of separate status overcome because "the specification t[aught]" that one structure could meet two elements. *Id.* at 876.

### 1. *The Intrinsic Record Does Not Overcome the Becton Presumption*

Regeneron makes no serious argument that the intrinsic record—the claims, specification, or prosecution history—overcomes the *Becton* presumption. The intrinsic record contains no hint that the VEGF antagonist could also be the separately recited "buffer." Certain dependent claims specify concentrations that ***preclude*** the VEGF antagonist from also being the buffer. Appx12941 (¶171). And in the specification, ***every one*** of the eight examples and ***every one*** of the twenty-two other embodiments has a VEGF antagonist ***plus*** a separate buffer. Appx94-99 (2:33-4:62, 8:32-12:26). The specification says nothing about using the VEGF antagonist as the buffer too. Still less does it explain how to prepare and formulate aflibercept in a way that renders a separate buffer unnecessary—innovations that ***Amgen*** later developed. Appx12909-10 (¶¶110-111); Appx12922-24 (¶¶133-136).

In the district court, Regeneron's intrinsic record argument relied on a strained incorporation by reference theory. The '865 patent identifies "glycerol" as a "stabilizing agent." Appx94 (2:44-45). Elsewhere, the patent states: "Ophthalmic formulations are known, see for example, U.S. Pat. Nos. 7,033,604 and 6,777,429." Appx94 (2:1-2). The '429 patent, in turn, mentions glycerol as a "non-ionic tonicity agent." Appx9379 (1:25). "Tonicity agent" is not one of the four elements at issue. But Regeneron's theory was that, if "the '429 patent teaches certain components . . . can have different functions," then "***all*** components can be presumed to have more

than one function" within the meaning of the claims. Appx48 (emphasis added). The district court properly rejected that meritless argument. Appx48-49. Tellingly, Regeneron does not renew the argument on appeal, even though it was Regeneron's ***principal argument*** about the intrinsic record in the court below. Regeneron cannot make that abandoned argument for the first time on reply. *See Yeda Rsch. v. Mylan Pharms. Inc.*, 906 F.3d 1031, 1044 (Fed. Cir. 2018).

Rather than invoke anything in the claims or specification to rebut the *Becton* presumption, Regeneron rehashes its efforts to avoid the *Becton* framework altogether. For example, Regeneron urges that it is not "physical[ly] impossib[le]" for the same substance to act as both the VEGF antagonist and the buffer. Regeneron Br. 41. But, as already explained, *Becton* and its progeny do not establish an "impossibility" standard. *See* pp. 38-44, *supra*. To overcome the *Becton* presumption, Regeneron must point to intrinsic evidence that the inventors sought to ***claim*** formulations in which one component satisfies multiple, separately recited elements. Regeneron cannot meet that burden just by showing that it is ***physically possible*** to imagine such formulations.

Nor does the district court's preliminary construction of "buffer" in *Formycon* provide any basis for rebutting the *Becton* presumption. Regeneron Br. 42. Whether a party has rebutted the *Becton* presumption focuses on whether the inventors described and intended to claim formulations in which a single component satisfies

multiple separately recited claim elements. 616 F.3d at 1254. Nothing in the '865 patent remotely indicates that the inventors understood that the active ingredient, aflibercept, could also be the "buffer," or that the inventors intended to claim formulations in which the aflibercept satisfies both of those separately recited elements. Appx37-57. Regeneron's "overlapping scope" argument thus fails to rebut the *Becton* presumption for the same reason that it is not a basis for refusing to apply *Becton* in the first place: It does not show that the inventors, despite reciting four separate elements, intended to claim formulations that lack a separate component corresponding to each element.

Regeneron disputes whether its construction renders the term "buffer" superfluous and urges that, while certain ***dependent*** claims may require a separate buffer, that does not make its construction nonsensical with respect to ***other*** claims. Regeneron Br. 44-50. That argument cannot overcome the *Becton* presumption either. Regeneron must point to something sufficiently persuasive in the claims, specification, or prosecution history to show that the inventors sought to claim formulations that lack a distinct component for each separately listed element. Regeneron's construction might be ***even more*** obviously wrong if it rendered claim terms superfluous or nonsensical. But the mere absence of such ***additional*** defects does not mean that Regeneron has overcome the *Becton* presumption.

In ***every case*** where this Court has found the *Becton* presumption overcome, the patent expressly disclosed embodiments where a single component performed the role of multiple, separately recited claim elements. *See, e.g.*, *Google*, 92 F.4th at 1057-59 (embodiment where claim elements were not distinct); *Powell*, 663 F.3d at 1231-32 (specification taught that "cutting box may also function as a 'dust collection structure' "); *Retractable Techs.*, 653 F.3d at 1303 (claims recited that "retainer member" could be subcomponent of "needle holder"); *Linear Technology*, 566 F.3d at 1055 (two structures "share[d] common components"). ***That*** is the sort of intrinsic record that might conceivably rebut the *Becton* presumption. Regeneron points to nothing similar here.

**2. *The Extrinsic Evidence Favors Amgen***

Because the intrinsic record was "clear and unambiguous," the district court properly recognized that the extrinsic evidence could not alter the outcome. Appx61. Examining that evidence only "for completeness," the court concluded that it favored Amgen too. Appx62-77. The court found that aflibercept was not "known as (or understood to be) a buffer in a pharmaceutical composition during the relevant timeframe." Appx66. Because no one had even ***conceived*** of formulating aflibercept without a separate buffer, the extrinsic evidence could not overcome the presumption that the "VEGF antagonist" and the "buffer" were separate structures. Regeneron comes nowhere close to showing clear error in those factual findings.

Regeneron argues that courts should consider extrinsic evidence under *Becton* ***even if*** the intrinsic record is unambiguous. Regeneron Br. 54. But the specification is "the single best guide to the meaning of a disputed term" and is usually "dispositive." *Phillips*, 415 F.3d at 1315. Extrinsic evidence therefore cannot alter "the meaning of a claim term [that] is clear from the intrinsic evidence." *Seabed Geosolutions (US) Inc. v. Magseis FF LLC*, 8 F.4th 1285, 1287 (Fed. Cir. 2021). There is no reason why those claim construction principles should apply any differently just because a case involves the *Becton* presumption. Regeneron admits that this Court has never found the *Becton* presumption overcome based solely on extrinsic evidence. Regeneron Br. 54.

Regeneron offers no good reason why this case should be the first. Regeneron cites scientific articles for the point that "proteins have been known for decades to be buffers or have buffering capacity." Regeneron Br. 52. But those articles concerned unrelated contexts like "vertebrate muscles" and "horse oxyhemoglobin." Appx64. None of them involved using a protein (much less aflibercept) as a buffer ***in a pharmaceutical formulation***. Appx64. The district court reasonably declined to infer that, just because scientists knew that certain proteins in vertebrate muscles or horse blood had buffering properties, a person of ordinary skill in the art would have thought to use aflibercept as the buffer in a pharmaceutical formulation.

This Court reviews that "underlying factual dispute" only for "clear error." *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 322 (2015). That is a demanding standard. This Court may overturn a finding only if "left with the definite and firm conviction that a mistake has been made." *Endo Pharms. Inc. v. Actavis LLC*, 922 F.3d 1365, 1371 (Fed. Cir. 2019). "Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous." *Genentech, Inc. v. Sandoz Inc.*, 55 F.4th 1368, 1376 (Fed. Cir. 2022). Regeneron's unpersuasive arguments amount, at best, to assertions that the district court should have drawn different inferences from the evidence. They do not establish the clear error required to overturn the court's findings.

The first reference that disclosed the use of proteins (but not aflibercept) in a pharmaceutical formulation was Amgen's own Gokarn patent application. Appx64. That application was filed just ***eight days*** before the '865 patent's priority date, and it was not published until ***months later***. Appx67. Claims are construed based on "the ordinary and customary meaning of a claim term . . . ***as of the effective filing date*** of the patent application." *Phillips*, 415 F.3d at 1313 (emphasis added). A secret application that was not published until months later cannot advance the state of the art or the understanding of skilled artisans as of the '865 patent's priority date. Gokarn is thus irrelevant to the claim construction issue here.

Regeneron insists that Gokarn can be used to construe claim terms as of the ’865 patent’s priority date because Gokarn qualifies as pre-AIA § 102(e) prior art despite its later publication. Regeneron Br. 55. Regeneron’s sole support is dicta in one footnote in a 50-year old CCPA decision, *In re Glass*, 492 F.2d 1228, 1232 n.6 (C.C.P.A. 1974). But the CCPA walked back that footnote just three years later, explaining that “later-issued patents and publications [are relevant] only if a showing is made that such claim language is the ‘language of the ***present*** art’ as of the filing date of the application in question.” *Application of Voss*, 557 F.2d 812, 818-19 n.15 (C.C.P.A. 1977) (emphasis added). Regeneron makes no showing that Gokarn was describing the then-existing ***present*** art, as opposed to the innovation that Gokarn itself was claiming and that Gokarn did not publicly disclose until after the ’865 patent’s priority date. Gokarn expressly observes that self-buffering protein formulations “ha[d] not been recognized prior to the invention herein disclosed.” Appx9292. The district court thus stated that it would reach the same conclusion even if it considered Gokarn’s disclosures. Appx69-70. Regeneron cannot show clear error in that factual finding either.

Regeneron’s reliance on Amgen’s own Gokarn application is ironic. Gokarn advanced the art over the ’865 patent precisely by disclosing certain ***buffer-free*** formulations in which the therapeutic protein is itself capable of maintaining pH stability. In 2006, such formulations were still in their nascency—it was not until

well over a decade later that Amgen developed the first such formulation of aflibercept. Appx12909-10 (¶¶110-111); Appx12922-24 (¶¶133-136). Regeneron seeks to deny Amgen the fruits of its invention by asserting—without evidence—that Amgen merely discovered what the ’865 patent inventors already knew.

## III. REGENERON’S CONSTRUCTION RENDERS THE ’865 PATENT INVALID FOR LACK OF WRITTEN DESCRIPTION

Regeneron’s claim construction cannot help it regardless. If adopted, the construction would invalidate the claims.

A patent’s specification must “contain a written description of the invention.” 35 U.S.C. § 112(a). For a genus claim, the written description must disclose “either a representative number of species falling within the scope of the genus or structural features common to the members of the genus so that one of skill in the art can ‘visualize or recognize’ the members of the genus.” *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1350 (Fed. Cir. 2010) (en banc). “[M]erely drawing a fence around the outer limits of a purported genus” is not enough. *Id.*

Those principles are particularly important where a patent claims a broad array of species defined in functional terms. In *Juno Therapeutics, Inc. v. Kite Pharma, Inc.*, 10 F.4th 1330 (Fed. Cir. 2021), for example, the Court held a patent invalid where it disclosed only discrete examples within a broad functionally defined genus: “The disclosure of one scFv that binds to CD19 and one scFv that binds to a PSMA antigen . . . does not . . . establish that a skilled artisan would understand how

to identify the species of scFvs capable of binding to the ***limitless*** number of targets as the claims require." *Id.* at 1337 (emphasis added). Similarly, in *AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.*, 759 F.3d 1285 (Fed. Cir. 2014), the Court held that a patent did not provide adequate written description where it disclosed many examples, but they were all similar to each other and not representative of other ***qualitatively different*** species within the claim: "Although the number of the described species appears high quantitatively, the described species are all of the similar type and do not qualitatively represent other types of antibodies encompassed by the genus." *Id.* at 1300.

Under Regeneron's expansive construction, the '865 patent lacks written description support for the same reasons. Regeneron asserts that a buffer can be ***any*** "substance that resists changes to pH . . . including, for example, histidine, phosphate, and proteins like aflibercept"—even when the same aflibercept is already the VEGF antagonist. Appx26. That is a broad functional definition: A "buffer" is any substance that buffers—whether phosphate, another excipient, a protein, or even the very same protein already serving as the active ingredient. As Amgen's expert pointed out, that expansive definition would also encompass a multitude of other substances such as enzymes, growth factors, and hormones, all of which may resist changes in pH. Appx12995-97 (¶¶284, 287).

The ’865 patent specification comes nowhere close to providing written description support for that expansive genus. The patent describes eight “examples” and twenty-two other embodiments. ***All eight*** of the examples and ***twenty of the twenty-two*** embodiments disclose exactly the same buffer: “phosphate.” Appx94-99. The other two embodiments merely identify the buffer as a “buffering agent”—a tautological description that provides no written description support at all. Appx94-95 (2:34-37, 3:12-14). Nowhere does the specification disclose any of the other “buffers” that allegedly fall within Regeneron’s sprawling genus.

The specification also says nothing about how to prepare and formulate aflibercept to provide buffering capacity at a particular pH. An artisan would need those details too. Amgen spent considerable effort developing its innovative buffer-free formulation. Appx12909-10 (¶¶110-111); Appx12922-24 (¶¶133-136). Regeneron not only seeks credit for Amgen’s later invention, but implausibly asserts that Regeneron ***disclosed*** that later invention in its own patent. The ’865 patent says nothing of the sort.

In the *Mylan* litigation, Regeneron defended against written description and enablement challenges by emphasizing that the patent was “full of structural limitation.” Appx13400. Regeneron’s expert urged that the patent claimed only “common structural features” that were “well known in the art.” *Mylan*, 714 F. Supp. 3d at 751. Those arguments cannot be reconciled with Regeneron’s current

position that the term "buffer" is effectively a functional limitation that covers anything and everything that buffers. If the patent is as broad as Regeneron now claims, it is invalid for lack of written description.

## IV. THE COURT NEED NOT ADDRESS REGENERON'S ARGUMENTS OVER WHAT SUBSTANCES QUALIFY AS A "BUFFER"

Because the district court correctly applied *Becton* to conclude that the '865 patent requires a buffer ***separate from*** the VEGF antagonist, the court properly declined to resolve whether the term "buffer" includes ***any*** substance that resists pH changes, even "proteins like aflibercept." Appx78-79. Regeneron nonetheless devotes a large section of its brief to that issue, speculating that Amgen will lack confidence in the district court's ruling and urge affirmance on this alternative ground. Regeneron Br. 60-71. That speculation is misplaced. The district court's *Becton* analysis is persuasive, and Amgen will not burden this Court with extended analysis of an extraneous issue. Even a brief review shows that the term "buffer" does not include "proteins like aflibercept." Appx12938-68 (¶¶163-220).

***First***, nothing in the claims or specification suggests that the term "buffer" includes "proteins like aflibercept." The '865 patent does not disclose using aflibercept as both the "VEGF antagonist" and the "buffer." *See* pp. 28-31, *supra*. The patent also does not disclose using aflibercept as the "VEGF antagonist" while using some ***other*** "protein ***like*** aflibercept" as the buffer. There is simply nothing in the specification about using ***any*** protein as the "buffer." The only buffer the '865

patent mentions—in eight different examples and twenty different embodiments—is a traditional excipient, phosphate. Appx94-99.

***Second***, the extrinsic evidence confirms that "buffer" does not include "proteins like aflibercept." The district court found in its *Becton* analysis that skilled artisans did not consider active proteins like aflibercept to be buffers in pharmaceutical formulations during the relevant timeframe. Appx57-72; pp. 48-52, *supra*. That same finding controls the meaning of the term "buffer" too. Claim construction turns on "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313. The fact that no one had conceived of using aflibercept as a buffer in a formulation until Amgen later invented the approach is a powerful reason that skilled artisans would not have read the term "buffer" to include such proteins.

***Third***, Regeneron referred to the "buffer" as an "excipient" (a term that excludes the active ingredient) throughout the *Mylan* litigation, before it learned about Amgen's innovative formulation. *See* p. 13, *supra*. That ***Regeneron*** did not understand the term "buffer" to encompass proteins like aflibercept makes it hard to believe that skilled artisans would have understood the term that way.

***Finally***, even if the term "buffer" were ambiguous (and it is not), claims should be "construed to preserve their validity" so long as they remain ambiguous after applying traditional tools of construction. *Phillips*, 415 F.3d at 1327. "[G]rave

doubts" of invalidity can "reinforce the textual objections to [a patentee's] proposed construction." *Bayer CropScience AG v. Dow AgroSciences LLC*, 728 F.3d 1324, 1330 (Fed. Cir. 2013); *cf. Veterans4You LLC v. United States*, 985 F.3d 850, 860-61 (Fed. Cir. 2021) (constitutional avoidance canon). Because construing the term "buffer" to include "proteins like aflibercept" would invalidate the claims for want of written description, the Court should adopt a more restrained interpretation.

## V. THE '865 PATENT IS INVALID FOR OBVIOUSNESS-TYPE DOUBLE PATENTING

The '865 patent is also invalid under the prohibition on obvious-type double patenting. That bar provides an alternative ground for affirmance.

### A. The '865 Patent Is an Improper Attempt To Extend Regeneron's Exclusivity over Eylea

"The judicially-created doctrine of obviousness-type double patenting . . . prohibit[s] a party from obtaining an extension of the right to exclude through claims in a later patent that are not patentably distinct from claims in a commonly owned earlier patent." *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 967 (Fed. Cir. 2001). The '865 patent is invalid under those principles. Regeneron previously obtained U.S. Patent No. 9,340,594 (the "'594 patent"), which includes at least one claim (claim 5) that is not patentably distinct from the '865 patent claims asserted here. Appx7633 (19:21-20:24).

The ’594 patent has the same inventors and assignee as the ’865 patent; it shares the same specification; and it claims the same priority date. Appx7623. Claim 5 of the ’594 patent claims the formulation for Eylea, just like the ’865 patent does. Appx13006-07 (¶¶309-310). The ’594 patent issued on May 17, 2016. Appx7623. That patent, however, expired in March 2021 because Regeneron agreed to a terminal disclaimer to avoid a double patenting rejection over ***yet another*** Eylea patent. Appx13004 (¶305). Double patenting principles preclude Regeneron from enforcing the ’865 patent now that the ’594 patent has expired.

### B. Double Patenting Principles Apply When a Patent Expires Due to a Terminal Disclaimer

Regeneron argued below that the double patenting bar does not apply because the ’594 patent expired due to a terminal disclaimer. But what matters is that the ’594 patent ***did*** expire. That expiration precludes Regeneron from reclaiming the same invention through other patents.

The Patent Act permits an applicant to “disclaim or dedicate to the public the entire term, or any terminal part of the term, of the patent granted or to be granted.” 35 U.S.C. § 253(b). “When a patent issues subject to a terminal disclaimer, the patentee . . . has not just agreed to forgo some amount of its enforceable term, but has in fact ***reduced the term itself*** by effectively eliminating the disclaimed portion from the original patent.” *In re Yamazaki*, 702 F.3d 1327, 1333 (Fed. Cir. 2012) (emphasis added).

This Court held in *Eli Lilly* that the double patenting bar applies even where the reference patent expires because of a terminal disclaimer: "[D]ouble patenting precludes [a claim] from extending beyond the termination date of the [reference] patent, ***whether that termination date is at the end of its normal term or, as in this case, is the date it is terminated via disclaimer***." 251 F.3d at 968 n.5 (emphasis added). That holding applies squarely here.

### C. There Is No Patentable Distinction Between the Asserted Claims and the Expired Claim

Regeneron also argued below that claim 5 of the '594 patent is patentably distinct from the '865 patent claims asserted here. Although the patents share a common specification, Regeneron points to the slightly different claim language they use to describe the invention. Those differences, however, are manifestly obvious and do not prevent application of the double patenting bar.

Regeneron urges that the '865 patent claims "glycosylated" aflibercept as the VEGF antagonist, whereas the '594 patent claims just aflibercept. *Compare* Appx103-04 (19:35-37, 21:6-8) *with* Appx7633 (19:40-20:24). The '594 patent, however, discloses glycosylated aflibercept, rendering any such difference obvious. The ***sole disclosure*** of aflibercept in the '594 patent refers to "glycosylated" aflibercept. *See* Appx7626 (6:4-7) (protein "comprises amino acids 27-457 of SEQ ID NO:4 ***and is glycosylated***" (emphasis added)). Indeed, "[t]he ***only*** method proven in the prior art for making aflibercept was CHO cell production, which would

have been expected to (and does) result in glycosylation." Appx13036 (¶365). The '865 patent claims thus merely stated the obvious when they said that the aflibercept was glycosylated.

Regeneron also urges that the '865 patent claims require "at least 98%" stability, whereas claim 5 of the '594 patent required merely a "stable" formulation. *Compare* Appx103 (19:38-49) *with* Appx7633 (19:24-25). But both patents disclose the same stability test results, which exceed 98%. Appx7627-28 (8:55-9:47) (examples 3 and 4). Merely claiming the exact same test results ***more specifically*** in the later patent does not render those claims non-obvious. Appx13031-32 (¶355).

Finally, the '865 patent claims both a pre-filled syringe and a vial, whereas the '594 patent claimed only a pre-filled syringe. *Compare* Appx103 (19:29, 20:66) *with* Appx7633 (19:22). But an invention must be "more than the simple substitution of one known element for another." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007). Vials and pre-filled syringes were both well-known containers for storing liquids. Switching one out for the other would have been obvious.

The other biosimilar defendants have all raised substantially the same double patenting argument. *See, e.g.*, Celltrion Br. in No. 24-2058, at 27-66. If the Court reverses the district court's validity rulings in any of those cases, the same reasoning would require this Court to affirm on that alternative ground here.

## VI. THE COURT SHOULD REMAND FOR A CALCULATION OF DAMAGES FROM THE TEMPORARY INJUNCTION

On September 25, 2024, this Court entered a temporary injunction while it considered Regeneron's motion for an injunction pending appeal. ECF No. 19. The Court ordered Amgen to address "any appropriate bond for both the temporary stay and a potential stay pending appeal." *Id.* Amgen requested bonds for both, showing that the temporary injunction was causing it substantial losses each day. ECF No. 21 at 23. Regeneron urged that a bond was unnecessary because, "if this Court ultimately affirms, it can remand to assess Amgen's actual harm, if any." ECF No. 29 at 14-15.

Consistent with that approach, on October 22, 2024, this Court vacated the temporary injunction and denied an injunction pending appeal but did not address any bond issues. ECF No. 37. Accordingly, if this Court now affirms the district court's denial of a preliminary injunction, Amgen respectfully requests that the Court direct the district court on remand to assess Amgen's harm from the temporary injunction and to provide appropriate relief.

## CONCLUSION

The Court should affirm the district court's denial of a preliminary injunction.

November 4, 2024

Respectfully submitted,

/s/ Jeffrey A. Lamken

Jeffrey A. Lamken
Robert K. Kry
Lucas M. Walker
Kayvon Ghayoumi
MOLOLAMKEN LLP
600 New Hampshire Ave., NW, Suite 500
Washington, D.C. 20037
(202) 556-2010

John R. Labbe
Kevin M. Flowers
Thomas Burns
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, IL 60606
(312) 474-6300

Wendy Whiteford
Eric Agovino
Chanson Chang
Pauline Pelletier
AMGEN INC.
One Amgen Center Drive
Thousand Oaks, CA 91320
(805) 447-1000

E. Anthony Figg
Joseph A. Hynds
Jennifer Nock
Brett A. Postal
ROTHWELL, FIGG, ERNST, & MANBECK, P.C.
901 New York Avenue, NW
Suite 900 East
Washington, D.C. 20001
(202) 783-6040

*Attorneys for Defendant-Appellee Amgen Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g) and Federal Circuit Rule 32(b)(3), the undersigned counsel hereby certifies:

1. This brief complies with the type-volume limitation of Federal Circuit Rule 32(b)(1). This brief contains 13,768 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief was prepared using Microsoft Word in a proportionally spaced typeface, Times New Roman 14 point.

Dated: November 4, 2024 /s/ Jeffrey A. Lamken