No. 24-2351

# In the United States Court of Appeals for the Federal Circuit

REGENERON PHARMACEUTICALS, INC.,
*Plaintiff-Appellant,*

*v.*

MYLAN PHARMACEUTICALS INC., AMGEN USA, INC., BIOCON BIOLOGICS INC., CELLTRION, INC., FORMYCON AG, SAMSUNG BIOEPIS CO., LTD.,
*Defendants,*

AMGEN INC.,
*Defendant-Appellee,*

Appeal from the United States District Court for the Northern District of West Virginia in No. 1:24-md-3103-TSK, Chief Judge Thomas S. Kleeh

## REPLY BRIEF OF APPELLANT REGENERON PHARMACEUTICALS, INC.

DAVID I. BERL
THOMAS S. FLETCHER
ANDREW V. TRASK
CHARLES L. MCCLOUD
SHAUN P. MAHAFFY
KATHRYN S. KAYALI
ARTHUR J. ARGALL III
ADAM PAN
CHRISTIAN GLADDEN-SORENSEN
RHOCHELLE KRAWETZ
WILLIAMS & CONNOLLY LLP
*680 Maine Ave. SW*
*Washington, DC 20024*
*(202) 434-5000*

ELIZABETH S. WEISWASSER
WEIL, GOTSHAL & MANGES LLP
*767 Fifth Ave.*
*New York, NY 10153*
*(212) 310-8022*

PRIYATA PATEL
WEIL, GOTSHAL & MANGES LLP
*2001 M St. NW, Suite 600*
*Washington, DC 20036*
*(202) 682-7041*

*Attorneys for Plaintiff-Appellant*

*Counsel listing continues on inside cover*

JACOB E. HARTMAN
KELLOGG, HANSEN, TODD, FIGEL & FREDERICK PLLC
*1615 M St. NW, Suite 400*
*Washington, DC 20036*
*(202) 326-7989*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2024-2351

**Short Case Caption** Regeneron Pharmaceuticals, Inc. v. Mylan Pharmaceuticals Inc.

**Filing Party/Entity** Regeneron Pharmaceuticals, Inc.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 11/13/2024

Signature: /s/ David I. Berl

Name: David I. Berl

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Regeneron Pharmaceuticals, Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☑ Additional pages attached

| | | |
|---|---|---|
| See Exhibit A | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

**Exhibit A**

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

BIENERT KATZMAN LITTRELL WILLIAMS LLP: Anthony R. Bisconti

CAREY DOUGLAS KESSLER & RUBY PLLC: David R. Pogue, Jordan L. Damron, Michael W. Carey, Raymond S. Franks II, Steven R. Ruby, S. Benjamin Bryant

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, PLLC: Alyssa J. Picard, Andrew E. Goldsmith, Evan T. Leo, Grace W. Knofczynski, Mary Charlotte Y. Carroll, Sven Eric Henningson III

ROBINSON MILLER LLC: Keith J. Miller, Michael J. Gesualdo

UMHOFER, MITCHELL AND KING LLP: Matthew Donald Umhofer, Jonas Palmer Mann

WEIL, GOTSHAL & MANGES LLP: Anish R. Desai, Christopher M. Pepe, Jennifer Brooks Crozier, Kathryn Leicht, Kellie C. Van Beck, Matthew D. Sieger, Natalie C. Kennedy, Rocco Recce, Tom Yu, Yi Zhang, Zhen Lin

WILLIAMS & CONNOLLY LLP: Ellen E. Oberwetter, Haylee N. Bernal Anderson, Nicholas W. Jordan, Jennalee Beazley, Rebecca A. Carter, Renee M. Griffin, Teagan James Gregory

# TABLE OF CONTENTS


Page(s)

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. "VEGF Antagonist" and "Buffer" Do Not Require Separate Structures .......... 2

A. Amgen Cannot Justify the District Court's Inconsistent Constructions of Buffer .......... 4

B. The District Court Impermissibly Ignored the Claim Meaning .......... 12

1. The Meaning of "Buffer" Renders Any *Becton* Presumption Inapplicable or Overcome .......... 13

2. The Specification Does Not Support a Separate-Structures Requirement .......... 22

3. Amgen Provides No Reason To Ignore the Extrinsic Evidence .......... 23

C. Amgen Shows No Error in the District Court's Construction of Buffer in *Formycon* .......... 28

II. The Court Should Reject Amgen's Copycat Validity Arguments .......... 30

A. Amgen Misapplies the Written Description Standard .......... 30

B. Amgen's Double-Patenting Argument Is Meritless .......... 33

III. Temporary Injunction Damages are Inappropriate .......... 35

CONCLUSION .......... 35

# TABLE OF AUTHORITIES

Page(s)

## CASES

*AbbVie Deutschland GmbH & Co. v. Janssen Biotech, Inc.*,
759 F.3d 1285 (Fed. Cir. 2014) ....................32

*Ajinomoto Co. v. Int'l Trade Comm'n*,
932 F.3d 1342 (Fed. Cir. 2019) ....................32

*Alcon Research Ltd. v. Barr Labs., Inc.*,
745 F.3d 1180 (Fed. Cir. 2014) ....................33

*Allergan USA, Inc.v. MSN Labs. Private, Ltd.*,
111 F.4th 1358 (Fed. Cir. 2024)....................34

*Amgen, Inc. v. Hoechst Marion Roussel, Inc.*,
314 F.3d 1313 (Fed. Cir. 2003) ....................32

*AstraZeneca AB v. Mylan Pharm. Inc.*,
19 F.4th 1325 (Fed. Cir. 2021)....................19

*Aventis Pharma S.A. v. Hospira, Inc.*,
675 F.3d 1324 (Fed. Cir. 2012) ....................23

*Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*,
616 F.3d 1249 (Fed. Cir. 2010) ....................6, 18, 24

*Bell Commc'ns Rsch., Inc. v. Vitalink Commc'ns Corp.*,
55 F.3d 615 (Fed. Cir. 1995) ....................12

*Bot M8 LLC v. Sony Interactive Entm't LLC*,
2023 WL 5606978 (Fed. Cir. Aug. 30, 2023)....................18, 22

*Cadence Pharm., Inc. v. Exela PharmSci Inc.*,
780 F.3d 1364 (Fed. Cir. 2015) ....................8

*Cannon Rubber Ltd. v. The First Years, Inc.*,
163 F. App'x 870 (Fed. Cir. 2005) ....................3, 15, 17

*CommScope Techs. LLC v. Dali Wireless Inc.*,
10 F.4th 1289 (Fed. Cir. 2021) .......... 14

*Cordis Corp. v. Medtronic AVE, Inc.*,
339 F.3d 1352 (Fed. Cir. 2003) .......... 32

*Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*,
689 F.3d 1368 (Fed. Cir. 2012) .......... 35

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*,
276 F. Supp. 3d 629 (E.D. Tex. 2017) .......... 32

*Ethicon LLC v. Intuitive Surgical, Inc.*,
847 F. App'x 901 (Fed. Cir. 2021) .......... 23, 29

*Exigent Tech., Inc. v. Atrana Sols., Inc.*,
442 F.3d 1301 (Fed. Cir. 2006) .......... 7

*Falko-Guntner Falkner v. Inglis*,
448 F.3d 1357 (Fed. Cir. 2006) .......... 29

*Google LLC v. EcoFactor, Inc.*,
92 F.4th 1049 (Fed. Cir. 2024) .......... 6, 7, 14, 21

*Google LLC v. Personal Audio, LLC*,
743 F. App'x 978 (Fed. Cir. 2018) .......... 17

*HTC Corp. v. Cellular Commc'ns Equip., LLC*,
701 F. App'x 978 (Fed. Cir. 2017) .......... 19

*In re Aflibercept Pat. Litig.*,
2024 WL 3423047 (N.D. W.Va. July 9, 2024) .......... *passim*

*In re Fischer*,
427 F.2d 833 (C.C.P.A. 1970) .......... 27

*In re Glass*,
492 F.2d 1228 (C.C.P.A. 1974) .......... 27

*In re Kaplan*,
789 F.2d 1574 (Fed. Cir. 1986) .......... 34

*In re Voss*,
557 F.2d 812 (C.C.P.A. 1977)....................................................................27

*Innogenetics, N.V. v. Abbott Labs.*,
512 F.3d 1363 (Fed. Cir. 2008) ..............................................................26

*Juno Therapeutics, Inc. v. Kite Pharma, Inc.*,
10 F.4th 1330 (Fed. Cir. 2021).................................................................32

*KSR Int'l Co. v. Teleflex, Inc.*,
550 U.S. 398 (2007)...................................................................................7

*Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*,
22 F.4th 1369 (Fed. Cir. 2022)...................................................6, 18, 19

*L.A. Biomedical Rsch. Inst. v. Eli Lilly & Co.*,
849 F.3d 1049 (Fed. Cir. 2017) .........................................................16, 17

*Markman v. Westview Instruments, Inc.*,
517 U.S. 370 (1996).....................................................................1, 3, 8

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995) (en banc) ...................................................22

*Omega Eng'g, Inc. v. Raytek Corp.*,
334 F.3d 1314 (Fed. Cir. 2003) ..............................................................29

*Otsuka Pharm. Co. v. Sandoz, Inc.*,
678 F.3d 1280 (Fed. Cir. 2012) ..............................................................34

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ......................................................*passim*

*Purdue Pharm. Prods., L.P. v. Actavis Elizabeth, LLC*,
2014 WL 2624787 (D.N.J. June 11, 2014)...................................................8

*Regeneron Pharm., Inc. v. Mylan Pharm. Inc.*,
714 F. Supp. 3d 652 (N.D. W.Va. 2024) ......................................23, 30, 31

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*
653 F.3d 1296 (Fed. Cir. 2011) ......................................................*passim*

*Russell v. Farley*,
105 U.S. 433 (1881)........................................................................................35

*Skedco, Inc. v. Strategic Ops., Inc.*,
685 F. App'x 956 (Fed. Cir. 2017) .......................................................................18

*Sun Pharm. Indus. Ltd. v. Saptalis Pharm., LLC*,
2019 WL 2549267 (D. Del. June 19, 2019)...............................................20, 21

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
574 U.S. 318 (2015)..........................................................................................8

*Thorner v. Sony Comput. Entm't Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012) ..........................................................4, 22, 23, 29

*TVIIM, LLC v. McAfee, Inc.*,
851 F.3d 1356 (Fed. Cir. 2017) ....................................................................17, 28

*Vas-Cath Inc. v. Mahurkar*,
935 F.2d 1555 (Fed. Cir. 1991) ..........................................................................33

*Verve, LLC v. Crane Cams, Inc.*,
311 F.3d 1116 (Fed. Cir. 2002) ....................................................................23, 24

*W.R. Grace & Co. v. Local Union 759*,
461 U.S. 757 (1983)........................................................................................35

## STATUTE AND RULE

35 U.S.C. § 102(e).....................................................................................27, 28

Fed. R. App. P. 8(a)(2)(E)..................................................................................35

## INTRODUCTION

To construe claim language, courts must construe the language in the claims. Amgen does not dispute that the district court traduced this elementary, self-evident proposition, by adjudicating the scope of the claimed "buffer" to exclude the aflibercept protein without deciding what a "buffer" is. Amgen instead urges affirmance on the basis that "*Becton* is a rule of claim construction," Response Brief ("RB") 39, as if that justifies discarding the *Markman* and *Phillips* rules for construing claims that courts have applied assiduously for three decades. Fatally for Amgen, no authority whatsoever permits the district court's flagrant claim-construction-without-construing-claim-language methodology, and *Becton* and its progeny reject it explicitly. Those cases reaffirm the primacy of claim language, including in applying *Becton*.

It is no secret why Amgen twists itself in knots to avoid the mandated *Phillips* inquiry regarding the claim language's meaning: every court to interpret a "buffer" claim term has construed it to mean any ingredient with certain structural features that resists changes to pH—including rather than excluding proteins like aflibercept. And every single expert to address the issue in this case, including Amgen's own, has agreed that buffers as of the

priority date were understood to include proteins. That evidence cannot be ignored in assessing whether aflibercept and buffer are distinct and non-overlapping claim limitations that different ingredients in an accused product must satisfy. The district court's failure to construe buffer in accordance with the plain meaning it adopted in *Formycon* only months earlier—a meaning that the district court did not disturb and Amgen does not seriously dispute before this Court—mandates reversal as to infringement.

Amgen recognizes as much, *sotto voce*, by devoting ten pages of its brief to arguments the district court did not address in denying injunctive relief—and that the district court already rejected, repeatedly, in this multidistrict litigation (four times for written description, and three times for double patenting). Amgen's desperate alternative grounds for affirmance likewise should be rejected.

## ARGUMENT

### I. "VEGF Antagonist" and "Buffer" Do Not Require Separate Structures

The parties' central dispute is whether, in applying *Becton*, courts must consider the meaning of claim language to the POSA under *Phillips*, as Regeneron argues—or, instead, may turn a blind eye to the claim language's meaning in concluding that *Becton* mandates separate structures, as Amgen

now urges. RB32. Bedrock claim-construction precedent resolves this dispute and forecloses Amgen's approach. "The inquiry into how a [POSA] understands a claim term provides an objective baseline from which to begin claim interpretation." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). Indeed, ascertaining the "acquired *meaning* of patent terms" is the fundamental purpose of claim construction. *Markman v. Westview Instruments*, 517 U.S. 370, 388 (1996). Contra Amgen, *Becton* did not pronounce an alternative rubric of ignoring the "objective baseline" of the claim language's meaning, *Phillips*, 415 F.3d at 1313, and displacing it with a superficial assessment of the claim's syntax. Under this Court's longstanding precedent, when one claim term ("buffer") as construed expressly overlaps with another claim term ("VEGF antagonist" protein), *Becton*'s presumption has no application or is overcome; separate structures are not required. *Retractable Technologies v. Becton, Dickinson*, 653 F.3d 1296, 1303 (Fed. Cir. 2011); *Cannon Rubber v. The First Years*, 163 F. App'x 870, 876 (Fed. Cir. 2005).

The district court construed "buffer" under *Phillips* in the *Formycon* case, and Amgen mounts no serious challenge to that construction or to Amgen's infringement under it. RB55. That is because Amgen's own

documents and expert explicitly acknowledge that 40 mg/ml aflibercept in Amgen's formulation "does serve as a buffer." Appx26327 (316:10-12). Because Amgen's product contains a "buffer" as that term is understood by the POSA, and undisputedly meets every other claim limitation, the district court's non-infringement decision should be reversed.

### A. Amgen Cannot Justify the District Court's Inconsistent Constructions of Buffer

Amgen attempts to sideline the prior ordinary-meaning construction of "buffer" in *Formycon*, presenting the false choice between applying that construction and applying *Becton*. RB31. The *Formycon* construction remains the only "buffer" construction under *Phillips*; Formycon did not appeal that construction, and Amgen barely contests it here, deeming it an "extraneous issue" (RB55-57). That ordinary meaning necessarily governs the construction of buffer where, as here, neither lexicography nor disavowal are present. *Thorner v. Sony*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). Controlling precedent forbids ignoring the ordinary meaning of "buffer" in assessing whether claim terms may overlap.

1. Amgen first argues that there is no inconsistency between the *Amgen* and *Formycon* claim interpretations, because the two cases addressed "different issues." RB32. Not so. Both cases presented the identical issue of

construing “buffer” in the same claim—but arrived at flatly conflicting outcomes. In *Formycon*, the court construed “buffer,” under the proper *Phillips* framework, “according to its ordinary meaning to the POSA: ‘a substance that resists changes to pH upon addition of an acid or base within an optimal pH range … *including, for example*, histidine, phosphate, *and proteins like aflibercept*.’” *In re Aflibercept*, 2024 WL 3423047, at *15 (N.D. W.Va. July 9, 2024) (“*Formycon*”) (emphases added). In *Amgen*, the court declined to apply or revisit its construction of “buffer,” Appx78, yet nonetheless concluded that aflibercept protein could *not* be a “buffer” because the claim lists it on a separate line.

Amgen offers no compelling basis to reconcile these irreconcilable conclusions. First, Amgen observes that *Formycon* construed “buffer” according to *Phillips* but did not address *Becton*. RB32. As Amgen concedes, “*Becton* is a rule of claim construction.” RB39. *Becton* therefore does not operate independently of *Phillips*; it must cohere with *Phillips*’ long-established rubric, not supersede it with a rigid rule to construe claim terms based solely on the claim’s syntax. This Court explicitly has rejected Amgen’s approach, confirming that whether separate terms require separate structures necessarily depends on the meaning of the claim language.

*Retractable*, 653 F.3d at 1303 ("claims allow[ed]" separate elements to be met by single structure); *Google v. EcoFactor*, 92 F.4th 1049, 1058 (Fed. Cir. 2024) (no separate-structures requirement where "claim language" did not impose it); *Becton, Dickinson v. Tyco*, 616 F.3d 1249, 1255 (Fed. Cir. 2010) ("plain language of the claims" supported that separate structures were necessary).

Desperate to avoid a construction reflecting the meaning of "buffer" to the POSA, Amgen repeatedly endorses a novel claim-construction approach that discards the meaning of claim terms and instead asks whether the terms are "each on a separate line." RB1, 2, 7, 17, 19, 25, 29. But *Phillips* holds otherwise, mandating consideration of all relevant evidence, especially evidence of "how a [POSA] understands a claim term." 415 F.3d at 1313. *Phillips* nowhere suggests this "objective baseline from which to begin claim interpretation," *id.*, may be erased talismanically by listing a term "on a separate line."

And fatally for Amgen, neither does *Becton*. *Infra* 17-18. The Court there conducted a garden-variety claim construction analysis that considered the meaning of the claim terms, not only their separate listing. *Becton*, 616 F.3d at 1255; *accord Kyocera v. ITC*, 22 F.4th 1369, 1382 (Fed. Cir. 2022) (concluding "claim language" did not overcome separate-structures

presumption). The Court should apply *Becton* just as it applies other claim-construction doctrines like claim differentiation—as "a guide, not a rigid rule of claim construction" requiring circumvention of claim terms' ordinary meanings. *EcoFactor*, 92 F.4th at 1058; *KSR v. Teleflex*, 550 U.S. 398, 419 (2007) ("Helpful insights … need not become rigid and mandatory formulas.").

Second, Amgen emphasizes that Formycon's formulation uses a separate free-histidine buffer, RB32, while in Amgen's formulation, aflibercept protein—through its histidine residues—acts as a buffer. But that difference in the *accused products* provides no basis for divergent *interpretations of the claims*. In construing "buffer," *Formycon* properly "addresse[d] this term in 'light of the claim language' and other pertinent evidence, '*not* in light of the accused device.'" 2024 WL 3423047, at *15 (quoting *Exigent Tech. v. Atrana*, 442 F.3d 1301, 1309 n.10 (Fed. Cir. 2006)). And although "a court is not required to construe every claim term" in deciding a motion, RB33, "buffer" *is the only term* relevant to the parties' dispute. The assertion that "the *scope* of the term 'buffer'" is irrelevant (RB34) rests entirely on Amgen's discredited premise that *Becton* operates outside the fundamental claim construction framework.

Amgen also suggests that although "proteins like aflibercept" can be buffers, aflibercept itself cannot. RB33. Nothing supports this muddled proteins-like-aflibercept-except-aflibercept interpretation. In Amgen's view, proteins fall within the claimed buffers, but the protein aflibercept is arbitrarily erased—even though aflibercept unquestionably meets the ordinary meaning of "buffer" recognized in *Formycon* and every case to construe that term. *E.g.*, *Cadence Pharm. v. Exela PharmSci*, 780 F.3d 1364, 1369 (Fed. Cir. 2015) (construing "buffering agent" as "an agent that helps the formulation resist change in pH"); *Purdue Pharm. v. Actavis*, 2014 WL 2624787, at *15 (D.N.J. June 11, 2014), *aff'd*, 627 F. App'x 931 (Fed. Cir. 2016) (construing "buffering agent" as "a proton-donating component or proton-accepting component used to maintain and/or achieve an approximate pH range"). Neither *Phillips* nor *Becton* authorizes such contortions of claim scope.

2. Amgen agrees that a purpose of claim construction is to achieve "uniformity in the treatment of a given patent," *Markman*, 517 U.S. at 390, and to prevent "divergent claim construction[s]," *Teva Pharm. v. Sandoz*, 574 U.S. 318, 329 (2015)—the precise reason the JPML ordered consolidation here, Appx3987; RB34-38; *see* Opening Brief ("OB") 31. Attempting to avert

the *Formycon* construction, Amgen focuses largely on three misplaced questions: (1) whether *Formycon* is "preclusive" or "binding" on Amgen (RB34-35); (2) whether the *Formycon* buffer dispute was improperly "procured" based on Amgen's confidential information (RB36-37); and (3) whether the buffer dispute was only "tangential" in *Formycon* (RB37).

First, Regeneron nowhere argued that *Formycon* was binding on Amgen. RB35. The *Formycon* construction should have been applied in *Amgen* not because it came first, but because it is unquestionably correct (and now unchallenged) under *Phillips*. *Infra* I.B. Amgen had every opportunity to challenge the meaning of "buffer" below, and in fact advanced a (now-abandoned) construction of "buffer" as limited to an "excipient buffer." OB60-70. The district court did not adopt that construction (or any construction), instead accepting Amgen's (flawed) *Becton* argument.

Second, Amgen's calumny that Regeneron construed "buffer" in *Formycon* based on "confidential details of Amgen's formulation" is disproven comprehensively by evidence Amgen never acknowledges. RB29-30, 36. As explained previously, OB59-60, in the *Mylan* litigation—long before Amgen's "confidential details" were available to Regeneron—Regeneron's expert explained "that proteins themselves have some buffering capacity," Appx75;

*see* Appx26307 (235:2-236:21), and Mylan's expert agreed that "the protein itself can act as a buffer," Appx75 (quoting Appx15322 (¶ 381) (citing Gokarn)); No. 22-cv-61, Dkt. 441-19, ¶ 54; Appx26313-26315 (260:19-265:22); OB33. The construction proposed and adopted in *Formycon* simply reflected this universally-agreed ordinary meaning. Amgen ignores entirely that Regeneron and its expert understood that "buffer" included proteins before Amgen disclosed its formulation, choosing instead to cast baseless aspersions. And even putting that evidence aside, the role of proteins as buffers was hardly a secret—contemporaneous technical dictionaries listed "proteins" in the definition of a "buffer," consistent with extensive literature. Appx9220-9221 (Webster's Medical Desk Dictionary); OB52-53, 64.

Amgen's related accusation that Regeneron "switch[ed] positions" from *Mylan* likewise lacks merit. RB29-30. The statements Amgen cites remain accurate: the claims are "full of structural limitation," both with respect to the fusion protein and "a buffer," which makes them narrow, rather than broad and functionally-defined. RB29-30. Amgen disparages (RB53) the *Formycon* construction as "a broad functional definition" inconsistent with Regeneron's position in *Mylan*, RB54. But Amgen can so assert only by ellipsing out the structural (italicized) language in the construction: "a substance that resists

changes to pH *upon addition of an acid or base within an optimal pH range through a proton-donating component and/or a proton-accepting component*, including, for example, histidine, phosphate, and proteins like aflibercept." *Formycon*, 2024 WL 3423047, at *15 (emphasis added). As Regeneron explained and Amgen ignores, OB59, Regeneron's and Dr. Trout's understanding of buffer was consistent in *Mylan* and *Amgen*; at no point did either suggest that proteins were excluded. Appx14189 (2097:10-18); OB69-70.

Third, despite acknowledging that it has "an incomplete record of redacted filings" from *Formycon*, RB35, Amgen asserts that the *Formycon* dispute regarding the scope of "buffer" was "tangential" and "barely" raised in briefing, RB37. The *Formycon* decision itself disproves Amgen's speculation: the "buffer" issue was "the parties' principal claim construction dispute"; it was briefed by both parties, supported by expert testimony, and interrogated at deposition. *E.g.*, 2024 WL 3423047, at *15-16 (discussing parties' arguments and experts' testimony). Formycon challenged Regeneron's construction, and its expert expressly disputed that proteins like aflibercept could act as buffers. *Id.* at *17. Formycon disputed that histidine was a "buffer," whether as a discrete substance or as a constituent of a protein,

as either met Regeneron's "buffer" construction. *Id.*; OB34. Contrary to Amgen's wishful retelling, the "buffer" dispute in *Formycon* was no afterthought.

Had Formycon prevailed in construing "buffer" to exclude histidine in proteins or free form, it would have avoided literal infringement entirely. *Id.* at *3, *17. That is hardly an inconsequential or "tangential" issue. That Formycon included a footnote with a passing complaint about the court's discussion of "buffer," alongside many others, hardly undermines the court's construction, No. 24-2009, Dkt. 28 at 57 n.15; RB37, which Formycon chose not to appeal.

### B. The District Court Impermissibly Ignored the Claim Meaning

The fundamental error in the district court's construction is that it failed to address what "buffer" means. Appx78. Amgen doubles down on that approach, asserting that "the only predicate" to a separate-structures requirement under *Becton* "is that the claim 'lists elements separately.'" RB39. But claim construction must "begin" with, not evade, the claim language's ordinary meaning to the POSA. *Phillips*, 415 F.3d at 1313; *Bell Commc'ns v. Vitalink*, 55 F.3d 615, 620 (Fed. Cir. 1995) ("[R]esort must be had in the first instance to the words of the claim, words to which we ascribe their

ordinary meaning unless it appears the inventor used them otherwise." (cleaned up)). Yet in Amgen's proposed framework under *Becton*, the meaning of "buffer" is utterly irrelevant. RB26-31, 39. That approach defies this Court's precedent and mandates reversal.

### 1. The Meaning of "Buffer" Renders Any *Becton* Presumption Inapplicable or Overcome

Amgen's discussion of *Becton* and its progeny (RB26-29) misses the salient point: in none of Amgen's cases did the POSA understand the terms at issue to have overlapping scope. Amgen mischaracterizes Regeneron to ask whether, under *Becton*, "it would be physically possible" for terms to overlap; that never has been Regeneron's position. RB38.[1] Regeneron maintains—and Amgen studiously ignores—that it is not only possible for "buffer" to encompass proteins like aflibercept, but that "buffer" *is ordinarily understood by the POSA* to include such proteins according to the court's own *Phillips* construction. OB37-39.[2] That meaning necessarily overcomes any

[1] Misleadingly, Amgen quotes (RB46) Regeneron's opening brief (OB41), where Regeneron simply quoted *Becton*.

[2] Amgen irrelevantly argues that Regeneron forfeited the "physically possible" argument it does not advance. RB38 & n.1. Regeneron consistently has maintained that *Becton* was inapposite. OB40-41; Appx4223; Appx26235-26236. Ultimately, whether *Becton*'s presumption is inapplicable or overcome makes no difference. OB35. Either way, the court's construction cannot stand.

applicable *Becton* presumption. Amgen's alternative rigid test, focusing on whether claim limitations are "on a separate line" and speculating about what "the patentee intended," contravenes long-settled precedent. RB29, 42.

1. Amgen concedes that "the claim language itself" may overcome any presumption under *Becton*. RB43. That undisputed principle is decisive here, given the claims' meaning under *Phillips*. In *Retractable*, for example, the claim language contemplated that two components, a "retainer member" and a "needle holder," could "structurally overlap" and thus did not require separate structures, even though they were separately listed. 653 F.3d at 1303; *EcoFactor*, 92 F.4th at 1058 (no separateness requirement, despite claim reciting "five inputs" separately, where claim "language places no constraint on the manner in which the inputs are used").

Amgen's principal distinction is that the *Retractable* claim language explicitly indicated overlap, RB43, whereas here the overlap arises from the meaning of "buffer" to the POSA. Crucially, Amgen's repeated distinction between the *words* in the claim and the *meaning* of those words to the POSA is no distinction at all, as the latter governs the infringement and validity inquiries. *E.g.*, *CommScope Techs. v. Dali Wireless*, 10 F.4th 1289, 1298 (Fed. Cir. 2021) (proper to apply "the claim terms as construed by the district

court"); *Cannon*, 163 F. App'x at 876. As Regeneron explained, OB39, and Amgen revealingly ignored, it makes no difference that the patent recites "a buffer" instead of reciting the definition of "buffer" that makes the overlap explicit, "a substance that resists changes to pH," "including … proteins like aflibercept." *Formycon*, 2024 WL 3423047, at *15; OB39. Amgen again has no response to this trenchant issue.

Amgen also suggests the limitations in *Retractable* were not "separately listed." RB43. That is incorrect: the "representative" claim recited a "retraction mechanism" "comprising a *needle holder* …, [and] a *continuous retainer member*," 653 F.3d at 1299-1300, and it was thus undisputed that the two elements were "separate claim limitations," *id.* at 1303.

Here, the overlap between "buffer" and "VEGF antagonist" aflibercept protein arises from the histidine that, undisputedly, is both a component of aflibercept and a buffer through its imidazole ring. Amgen neither contests that histidine was a known buffer nor that it was understood to impart buffering capacity to proteins by accepting and donating protons, as *Formycon* held and Amgen's expert agreed. *Formycon*, 2024 WL 3423047, at *16 (quoting Appx9208); Appx26323 (297:7-19); Appx26326-26327 (311:7-18, 312:22-314:10); Appx4691-4693 (¶¶ 78-79); OB7-8, 52-53.

Nor does any other intrinsic evidence warrant excluding proteins from the scope of "buffer." While Amgen notes that narrower, unasserted "dependent claims specify" buffer concentrations that Amgen does not use, RB30, that Amgen infringes an independent claim but not a dependent claim cannot support departure from the ordinary meaning of "buffer." OB48. Likewise, Amgen (rightly) declines to defend the district court's misunderstanding that Regeneron's (and its own) construction renders "buffer" superfluous. RB47; OB44-47. "Buffers" ordinarily include proteins. Departing from that understanding requires reciting, as Amgen (but not Regeneron) did in its patent claims, "a buffering agent *other than* said pharmaceutical antibody." Appx26367, Appx26431 (claim 1). The intrinsic and extrinsic evidence here decisively reflect that proteins like aflibercept were known buffers, as *Formycon* held.

Amgen likewise cannot distinguish Regeneron's other precedent (OB37-38) involving claim terms construed to have overlapping scope. Amgen argues that *Los Angeles Biomedical* "did not involve separately recited claim elements," RB44 n.2, but that is wrong: that claim "contain[ed] a limitation providing for a 'continuous long-term regimen' *in addition to the limitation* providing for administering a PDE5 inhibitor in an amount 'up to 1.5

mg/kg/day for not less than 45 days.'" *L.A. Biomed. Rsch. Inst. v. Eli Lilly*, 849 F.3d 1049, 1062 (Fed. Cir. 2017). Likewise, that *Google v. Personal Audio*, 743 F. App'x 978, 985 (Fed. Cir. 2018), involved obviousness (RB44 n.2) hardly negates its statement that "a single element … can ordinarily satisfy multiple claim limitations," which the Court explained was a "principle … in *infringement or obviousness* analysis." *Becton* does not negate the rule that "[c]laim terms must be construed the same way for the purpose of determining invalidity and infringement." *TVIIM v. McAfee*, 851 F.3d 1356, 1362 (Fed. Cir. 2017).

Amgen emphasizes that in *Cannon Rubber* (OB38-39) the specification indicated overlapping roles for the two elements, RB44 n.2, but the case's explicit *ratio decidendi* was that "the district court *construed the claims*" such that the two elements had overlapping scope. 163 F. App'x at 876. Claim construction requires construing the claim language, and the *Phillips* construction of "buffer" compels a finding of overlap between aflibercept and buffer, not distinctness. *Formycon*, 2024 WL 3423047, at *15-17.

2. Unlike the foregoing precedent, neither *Becton* nor Amgen's other authority addresses the scenario here where one claim term was ordinarily understood to have overlapping scope with another claim term. In *Becton*, as

Amgen admits (RB27), no evidence "suggest[ed] that the hinged arm and the spring means can be the same structure." *Becton*, 616 F.3d at 1254. Rather, because the two elements required a particular structural arrangement, to be "one and the same" would require a "nonsensical" "physical impossibility," which could not "be correct." *Id.* at 1255. Amgen strains to minimize this holding, deeming it meaningless because it is "introduced by the word '[i]ndeed.'" RB40. Fabricated interpretive rules cannot blithely erase the Court's reasoning. This Court has explained that "*Becton*'s holding was also premised on the notion that an alternative construction would have rendered the claims nonsensical" and "obvious over the prior art," not merely the separate listing in the claims. *Skedco v. Strategic Ops.*, 685 F. App'x 956, 960 (Fed. Cir. 2017); *Bot M8 v. Sony*, 2023 WL 5606978, at *4 (Fed. Cir. Aug. 30, 2023) ("[P]art of our rationale in *Becton* was that it would render the asserted claims 'nonsensical' … if [the claim elements] were the same structure.").

Amgen also invokes (RB27) *Kyocera*, where, likewise, no evidence indicated overlap between the claimed "exit end of the mechanism" and "safety contact element." 22 F.4th at 1382. The claims required "initiating a driving cycle by pressing said exit end against a workpiece," and separately recited "a safety contact element" and "an exit end of the mechanism." *Id.* at 1381-82.

Although the specification disclosed both embodiments where "a driving cycle is initiated by pressing the *safety contact element* against the workpiece" and embodiments where "a driving cycle is initiated by pressing the *exit end of the mechanism* against the workpiece," the asserted claims explicitly were limited to "the latter embodiment." *Id.* at 1382; *accord AstraZeneca v. Mylan*, 19 F.4th 1325, 1334-35 (Fed. Cir. 2021) (rejecting construction that "would read on two distinct formulations" from specification where claims chose "only one"). Unlike here, there was thus no indication that the two terms "overlap[ped]," RB41; rather, the invention could be configured in distinct ways.

*HTC v. Cellular Communications* similarly involved two distinct terms, a "diverting unit" and a "controlling entity," and no evidence indicated those terms shared overlapping scope. 701 F. App'x 978, 982 (Fed. Cir. 2017). Amgen cites the case's background to assert that "prior art references disclosed devices where the same component performed both roles," RB41-42, but points to no such finding on appeal or below. 701 F. App'x at 980-81. Regardless, neither party argued, and the Court did not conclude, that one term ordinarily would be understood to encompass the other. *Id.* at 982.

Finally, Amgen's cited district court case addressing the terms "sweetener" and "polyhydroxy alcohol" (RB42) likewise is inapposite. *Sun Pharm. v. Saptalis Pharm.*, 2019 WL 2549267, at *6-7 (D. Del. June 19, 2019). Unlike "buffer" here, the "sweetener" was not construed to encompass a class of structures elsewhere recited in the claims, but rather simply "impart[ed] a sweet taste while not increasing the blood glucose." *Id.* at *6. Moreover, similar to the structural arrangement in *Becton*, "the specification discusse[d] the preferred ratios between the polyhydroxy alcohol and the sweetener," which "would have no meaning if a single component could satisfy both limitations." *Id.* at *7. Here, the specification contains no such disclosure. Amgen emphasizes that the patentee in *Sun* argued that the two limitations "share overlapping *functionality*"—hardly "the exact same argument that Regeneron makes here." RB42 (emphasis added). Rather, Regeneron argues that "buffer" covers *structures* that resist pH changes by accepting and/or donating protons, which were understood to include histidine-containing proteins like aflibercept. OB42; *Formycon*, 2024 WL 3423047, at *15-16.

3. Amgen argues that "[o]n Regeneron's theory, the *Becton* presumption would do no work whatsoever." RB40. Not so. First, Amgen's assertion requires mischaracterizing Regeneron's argument as applying

*Becton* "only where it was *physically impossible*" for one component to meet two claim elements. RB39; *supra* 13-14. Second, Regeneron's actual argument accords with *Becton*. Regeneron agrees "there is a 'presumption' that separately listed claim limitations may indicate separate and distinct physical structure, but that presumption may always be rebutted in the context of a particular patent," and that "context" of course must include the meaning of the "claim language." *EcoFactor*, 92 F.4th at 1058. In certain cases with distinct terms ordinarily understood to have distinct meanings and scope, the *Becton* presumption may well govern. But where "buffer" as properly construed encompasses a genus that includes histidine-containing proteins like aflibercept, *Becton* cannot displace the claims' ordinary meaning.

4. Amgen also urges that the *Becton* inquiry focuses on "whether the patentee intended" claim limitations to have overlapping scope. RB42 (quoting *Sun*, 2019 WL 2549267, at *7); RB47. This too contravenes precedent: The "objective baseline" of claim construction is not the inventors' subjective intent, but "how a [POSA] understands a claim term." *Phillips*, 415 F.3d at 1313. This Court squarely rejected Amgen's proposed intent-based test:

> [T]he focus in construing disputed terms in claim language *is not the subjective intent of the parties to*

> *the patent contract* when they used a particular term. Rather the focus is on the objective test of what [a POSA] would have understood the term to mean.

*Markman v. Westview Instruments*, 52 F.3d 967, 986 (Fed. Cir. 1995) (en banc) (emphasis added). One searches in vain for an *en banc* claim-construction case Amgen's arguments do not defy.

**2. The Specification Does Not Support a Separate-Structures Requirement**

Amgen points to no specification disclosure it asserts to redefine or disavow the ordinary meaning of buffer. RB30-31. Rather, the specification simply provides that "the buffering agent may be, for example, phosphate buffer," Appx94 (2:45-46), and "[u]nless stated otherwise, all technical and scientific terms and phrases used herein have the same meaning as commonly understood by [the POSA]," Appx96 (5:39-42). The ordinary meaning thus governs. *Thorner*, 669 F.3d at 1365; *Formycon*, 2024 WL 3423047, at *17.

Amgen asserts that overcoming *Becton*'s presumption requires "expressly disclosed embodiments" where claim elements are met by the same structure, RB48, but the Court has declined to adopt Amgen's *sui generis* rule: in *Bot M8*, for example, the Court relied only on the claim language and the absence of any other evidence (in the specification or otherwise) that the two terms necessarily were separate structures, 2023 WL 5606978, at *4. Thus,

while Amgen emphasizes that all "eight examples" and nearly all of the "twenty-two other embodiments" use a phosphate buffer "separate" from a VEGF antagonist, RB30, even a hundred such embodiments would not support reading in a separate phosphate (or excipient) limitation into "buffer," absent lexicography or disclaimer. *Thorner*, 669 F.3d at 1365; *Aventis Pharma v. Hospira*, 675 F.3d 1324, 1330 (Fed. Cir. 2012); *Ethicon v. Intuitive Surgical*, 847 F. App'x 901, 907 (Fed. Cir. 2021). And that is particularly apt here, where the specification *distinguishes* buffers and excipients. Appx96 (6:12-19); OB 62-63. Likewise, it is irrelevant that the specification's embodiments or unasserted dependent claims recite buffer concentrations that 40 mg/ml aflibercept does not meet, RB30, because the asserted claims are not limited to those concentrations or embodiments.

### 3. Amgen Provides No Reason To Ignore the Extrinsic Evidence

1. Patents "are written for persons familiar with the relevant field; the patentee is not required to include in the specification information readily understood by practitioners." *Verve v. Crane Cams*, 311 F.3d 1116, 1119 (Fed. Cir. 2002); *Phillips*, 415 F.3d at 1313. Consistent with this principle, the specification does not elaborate on buffers, a well-known class of substances. *Regeneron v. Mylan*, 714 F. Supp. 3d 652, 751 (N.D. W.Va. 2024). Thus, in the

district court both Regeneron and Amgen referred to dictionary definitions, scientific literature, and expert testimony regarding the POSA's understanding of "buffer." OB52-53. Now, however, Amgen deems this extrinsic evidence irrelevant to whether separate structures are required, because Amgen asserts the intrinsic record is "clear and unambiguous." RB48.

However, Amgen points to no "unambiguous" statement as to *what buffer means*, RB49, and instead again observes that the patent's examples contain a phosphate buffer, RB45. While extrinsic evidence cannot alter a claim's meaning that "is clear from the intrinsic evidence," RB49, here the specification does not define "buffer," let alone provide a "clear and unambiguous" statement, and thus claim construction is properly "aided by extrinsic evidence of usage and meaning of a term in the context of the invention." *Verve*, 311 F.3d at 1119; *Phillips*, 415 F.3d at 1318; *Formycon*, 2024 WL 3423047, at *16. Amgen repeats the district court's error in discarding the meaning of "buffer" and the associated, substantial extrinsic evidence. RB48-49. No authority suggests that a separate-structures presumption governs irrespective of the meaning of the claim language; *Becton* expressly indicates otherwise. *Contra* RB48; *Becton*, 616 F.3d at 1255.

Simply because prior cases applying *Becton* did not involve extrinsic evidence provides no basis to ignore it, as Amgen now suggests.

2. Amgen provides little substantive response to the extensive extrinsic evidence. RB49-50. There is no dispute that (1) numerous scientific articles, (2) the medical dictionary definition, and (3) both parties' experts describe proteins expressly as buffers, including due to their histidine residues, as the district court previously found. OB52, 64; *e.g.*, Appx9228 (Christensen 1966) (entitled "Proteins as Buffers"); Appx9208 (Abe 2000); Appx9266, Appx9306 (Gokarn); Appx9220-9221 (Webster's Medical Desk Dictionary); *Formycon*, 2024 WL 3423047, at *16 (quoting Appx9208). Amgen labels this evidence irrelevant, because the references do not address aflibercept specifically, and some of them are directed to proteins generally as opposed to protein formulations. RB49. Neither argument withstands scrutiny.

First, no authority supports Amgen's notion that a claimed genus is limited to its species known at the time of the invention. RB49. Regardless of whether aflibercept specifically was known as a buffer, it undisputedly was known that histidine's imidazole structure within proteins like aflibercept (OB8-9) acted as a buffer. Appx4691-4693 (¶¶ 78-79) (Trout); Appx26323,

Appx26326-26327 (297:7-19, 311:7-18, 312:22-314:10) (Chamow). That is sufficient for aflibercept to fall within the genus, not be excluded from it through Amgen's separate-structure requirement. As Regeneron explained, OB57-58, and as Amgen ignores entirely, this Court has rejected that "a patent can never be literally infringed by embodiments that did not exist at the time of filing," because "case law allows for after-arising technology to be captured within the literal scope of valid claims that are drafted broadly enough." *Innogenetics v. Abbott Labs.*, 512 F.3d 1363, 1371-72 (Fed. Cir. 2008) (cleaned up). The district court's failure to heed this principle in assessing whether the *Becton* presumption was overcome (in its flawed *Phillips*-free inquiry) independently precludes affirmance.

Second, it is likewise irrelevant that the literature identifying proteins as buffers was not limited to protein formulations but rather addressed proteins generally. RB49. Whether a protein has buffering capacity has nothing to do with whether the protein is located in a "vertebrate muscle[]" or a formulation or a scientist's beaker, RB49, but rather on the imidazole structure in aflibercept and other proteins that may accept and donate protons at a particular pH range and thereby act as a buffer. That is why the medical

dictionary definition of a "buffer" explicitly identifies "proteins," which the district court and Amgen inexplicably ignored. Appx9220-9221.

3. Even were the formulation context relevant, Amgen's own Gokarn reference teaches that proteins may act as buffers in pharmaceutical formulations. OB55; Appx9292 (27:10-12); *see* Appx26233-26234. Amgen neither disputes Gokarn's teachings nor substantively defends the court's alternative analysis of Gokarn assuming it was relevant. OB56; RB51. Rather, Amgen deems Gokarn irrelevant because it is prior art under 35 U.S.C. § 102(e). RB50-51. But controlling precedent dictates that § 102(e) art may be used "to construe claim language." *In re Glass*, 492 F.2d 1228, 1232 n.6 (C.C.P.A. 1974).

Amgen argues, incorrectly, that the C.C.P.A. overturned *Glass sub silentio* in *In re Voss*. RB51. *Voss* concluded that § 102(e) art was relevant to claim construction if it speaks in "the 'language of the present art'" as of the priority date, 557 F.2d 812, 818 n.15 (C.C.P.A. 1977), quoting the "present art" language from *In re Fischer*, 427 F.2d 833, 838 (C.C.P.A. 1970). And *Fischer* clarified that more contemporaneous § 102(e) art, if anything, is *more* relevant than older art. *Id.* ("[W]ere we to require that claims speak in the language of the prior art, we would be prohibiting the use of the newer and frequently

more precise language of the present art."). Amgen offers no authority to support treating § 102(e) as sufficient to invalidate claims but yet forbidden to construe claims, where both validity and claim construction are assessed "as of the effective filing date." RB50.

Regardless, Gokarn is consistent with the "language of the present art," as the contemporaneous (and earlier) literature and technical dictionaries uniformly described proteins as buffers, regardless of whether Gokarn referenced this literature. RB51. Amgen points to no contrary teaching that proteins like aflibercept were not understood to act as buffers.

### C. Amgen Shows No Error in the District Court's Construction of Buffer in *Formycon*

Amgen asks the Court not to construe "buffer," RB55, and largely declines to address Regeneron's position that the *Formycon* construction is correct under *Phillips*, OB60-71. Amgen abandons its construction below that limits "buffer" to an "excipient," *compare* RB55-56, *with* Appx12699, and now offers no construction other than a negative limitation excluding proteins like aflibercept. RB55. Amgen cannot properly raise a new construction on appeal. *E.g.*, *TVIIM*, 851 F.3d at 1363. Regardless, Amgen's effort to read a negative limitation into "buffer" fails resoundingly.

Adding a "'negative limitation'" that "exclude[s] a particular element" requires "support either in 'the words of the claim' or through an 'express disclaimer or independent lexicography.'" *Ethicon*, 847 F. App'x at 907 (quoting *Omega Eng'g v. Raytek*, 334 F.3d 1314, 1323 (Fed. Cir. 2003)); *see Thorner*, 669 F.3d at 1365. Amgen ignores these requirements, which alone warrants rejecting its negative "no-proteins" limitation. "[T]he words of the claim" do not exclude proteins (or any buffers), and there is undisputedly no lexicography or disclaimer. Thus, proteins like aflibercept cannot be excluded from the scope of "buffer."

Amgen again observes that the claims and specification do not explicitly list proteins as buffers. RB55. The specification was not required to engage in the "forced recitation of known" buffers, *Falko-Guntner Falkner v. Inglis*, 448 F.3d 1357, 1368 (Fed. Cir. 2006), and the uniform evidence (including from Amgen's expert) reflected that proteins like aflibercept and other non-listed substances were long known to act as buffers, OB63-66. Amgen offers no reason that "buffer" should include non-listed free histidine (RB4) but somehow exclude other known buffers like proteins.

Amgen also repeats its argument that aflibercept specifically was not known to be a buffer. RB56. Even were that true (it is not), not every species

within the genus of buffers needed to be known for "buffer" to include histidine-containing proteins like aflibercept. *Supra* 25-26; OB57-58.

Amgen again invokes the *Mylan* litigation, RB56, but while Regeneron referred to excipients in addressing the facts in *Mylan*, it never argued that "buffer" was limited to excipients. OB68-71. Amgen has abandoned its excipient construction. And contra Amgen (RB56), both Regeneron's and Mylan's experts *did understand* buffers to include proteins, *supra* 9-10.

Amgen last urges excluding protein buffers from the claims "to preserve their validity." RB56. Far from showing "grave doubts" of validity, written-description defenses have been rejected four times. *Infra* II.A. Thus, this "doctrine of limited utility" is particularly weak here. *Phillips*, 415 F.3d at 1328.

## II. The Court Should Reject Amgen's Copycat Validity Arguments

### A. Amgen Misapplies the Written-Description Standard

Recognizing the fatal flaws in the district court's *Becton* analysis, Amgen argues that under the *Formycon* construction of "buffer," the claims lack written description. The district court previously rejected four similar written-description challenges, including in *Formycon* itself. *Mylan*, 714 F. Supp. 3d at 751-54; No. 24-md-3103, Dkt. 194 (SB PI Decision) at 111-17; Dkt.

247 (Formycon PI Decision) at 129-35; Dkt. 248 (Celltrion PI Decision) at 118-24. Amgen's warmed-over version is equally unsupported.

Amgen criticizes (RB53) the *Formycon* construction as "functional," but as explained above, Amgen's assertion rests entirely on expurgating the construction's structural requirements. *Supra* 10-11.

Citing its expert's *ipse dixit*, Amgen contends (RB53) that under the plain meaning of "buffer" the claims would encompass "a multitude" of substances. The universe of buffers is not nearly so vast. The claims do not recite any conceivable buffer in any conceivable formulation; they "are drawn to a specific protein at a specific concentration." *Mylan*, 714 F. Supp. 3d at 751. As the patent expressly teaches, aflibercept is suitable for intravitreal formulations and "is preferably substantially free of protein contaminants." Appx103 (claim 1, 6:42-45). The same is not true or disclosed for "enzymes, growth factors, and hormones." RB53.

Nor was the '865 patent required to list known buffers. The patent is directed not to new buffers but to ophthalmic formulations comprising 40 mg/ml aflibercept and specified ingredient categories that achieve 98% native conformation. Where a genus "is well understood in the art and *not itself the invention* but is instead a component of the claim, background knowledge may

provide the necessary support for the claim." *Erfindergemeinschaft v. Eli Lilly*, 276 F. Supp. 3d 629, 648 (E.D. Tex. 2017) (emphasis added) (citing *Amgen v. Hoechst Marion Roussel*, 314 F.3d 1313, 1319 (Fed. Cir. 2003)), *aff'd*, 739 F. App'x 643 (Fed. Cir. 2018); *Ajinomoto v. ITC*, 932 F.3d 1342, 1359 (Fed. Cir. 2019) ("[A] patentee may rely on information that is well-known in the art for purposes of meeting the written description requirement."). Here, a POSA understood, at the priority date, that proteins can serve as buffers. *See supra* 15-16, 25-26. And aflibercept at 40 mg/ml undisputedly functions as a buffer.[3]

Precedent likewise forecloses Amgen's complaint (RB54) that the patent does not disclose "how to prepare and formulate aflibercept" to act as a buffer. Written description does not require predicting "every conceivable and possible future embodiment of [the] invention." *Cordis v. Medtronic*, 339 F.3d 1352, 1365 (Fed. Cir. 2003). Likewise, contra Amgen, "[t]here is no

[3] The record here is nothing like *Juno Therapeutics v. Kite Pharma*, 10 F.4th 1330, 1341 (Fed. Cir. 2021), or *AbbVie v. Janssen Biotech*, 759 F.3d 1285 (Fed. Cir. 2014). *Juno* addressed claims to a structurally unlimited protein genus with a functional limitation "that a [POSA] could not predict before testing." 10 F.4th at 1341. *AbbVie* involved a patent that "d[id] not disclose structural features common to the members of the claimed genus." 759 F.3d at 1299. The claims here recite known structural ingredients, including a specific protein at a specific concentration, with the requisite correlation between structure and function.

requirement that the disclosure contain either examples or an actual reduction to practice" of any protein-as-buffer embodiment. *Alcon v. Barr Labs.*, 745 F.3d 1180, 1190 (Fed. Cir. 2014). Regardless, Amgen never disputes that its product's "buffer" is the same 40 mg/ml aflibercept the patent expressly discloses and claims, or that the POSA would understand proteins like aflibercept to have buffer capacity. Amgen's purported "considerable effort" to formulate aflibercept (RB54) is irrelevant to written description, which "must be judged as of the filing date." *Vas-Cath v. Mahurkar*, 935 F.2d 1555, 1566 (Fed. Cir. 1991).

**B. Amgen's Double-Patenting Argument Is Meritless**

Amgen alternatively seeks affirmance based on obviousness-type double patenting ("ODP"). Amgen concedes (RB60) that it raises "substantially the same" ODP argument as other biosimilars' related appeals (Nos. 24-1965, 24-2009, 24-2058). Like the other biosimilars' identical defenses, Amgen's ODP argument fails.

First, Amgen is wrong that the '594 patent is a proper double-patenting reference patent. This is not a case where near-identical patents claim different priority dates, or where the asserted patent has an adjustment or extension of its 20-year term. "It does not follow ... that the [asserted] patent

*must* be invalidated by the [reference] patents simply because it expires later." *Allergan v. MSN Labs.*, 111 F.4th 1358, 1368 (Fed. Cir. 2024). Rather, Courts must consider "the purpose of the ODP doctrine," *id.* at 1369—the "public policy that prevent[s] the *extension* of the term of a patent." *Otsuka Pharm. v. Sandoz*, 678 F.3d 1280, 1297 (Fed. Cir. 2012) (emphasis added) (cleaned up). Here, forgoing term in the '594 patent by terminal disclaimer in no way extends the '865 patent's 20-year term, and so the underlying purposes of ODP are not implicated.

Second, even were the '594 a proper reference patent, no ODP exists. Unlike '594 patent claim 5, the asserted claims recite a "glycosylated" protein and 98% native conformation. Amgen labels these differences obvious, but never grapples with the district court's repeated contrary factual findings in rejecting ODP in other cases. *See, e.g.*, SB PI Decision at 80-104. Moreover, Amgen (RB59-60) reads the '594 patent's specification—identical to the '865 patent's—as prior art, turning the patent's written-description support against it. "This has repeatedly been held in [the Court's] precedents to be impermissible," including where a single example meets both the reference and asserted claims. *In re Kaplan*, 789 F.2d 1574, 1580 (Fed. Cir. 1986). Indeed, Amgen's argument contravenes settled ODP precedent mandating "a

comparison between a patentee's earlier and later claims," without reliance on the specification. *Eli Lilly v. Teva*, 689 F.3d 1368, 1378 (Fed. Cir. 2012).

## III. Temporary Injunction Damages Are Inappropriate

Amgen requests a remand to determine Amgen's harm from the Court's temporary injunction, if it prevails. RB61. While the Federal Rules permit conditioning the grant of an injunction pending appeal on the filing of a bond, Fed. R. App. P. 8(a)(2)(E), here the Court did not order a bond for the temporary injunction and denied the injunction pending appeal. When an injunction has been issued but "no bond or undertaking has been required, it is clear that the court has no power to award damages." *Russell v. Farley*, 105 U.S. 433, 437 (1881); *W.R. Grace v. Local Union 759*, 461 U.S. 757, 770 n.14 (1983) ("A party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond."). Absent a bond, Amgen cannot be awarded damages for harm incurred during the temporary injunction. Thus, no remand to determine such damages would be warranted.

## CONCLUSION

The district court's judgment should be reversed, and the Court should preliminarily enjoin Amgen.

NOVEMBER 13, 2024

Respectfully submitted,

/s/ David I. Berl
DAVID I. BERL
THOMAS S. FLETCHER
ANDREW V. TRASK
CHARLES L. MCCLOUD
SHAUN P. MAHAFFY
KATHRYN S. KAYALI
ARTHUR J. ARGALL III
ADAM PAN
CHRISTIAN GLADDEN-SORENSEN
RHOCHELLE KRAWETZ
WILLIAMS & CONNOLLY LLP
*680 Maine Ave. SW*
*Washington, DC 20024*
*(202) 434-5000*

ELIZABETH S. WEISWASSER
WEIL, GOTSHAL & MANGES LLP
*767 Fifth Ave.*
*New York, NY 10153*
*(212) 310-8022*

PRIYATA PATEL
WEIL, GOTSHAL & MANGES LLP
*2001 M St. NW, Suite 600*
*Washington, DC 20036*
*(202) 682-7041*

JACOB E. HARTMAN
KELLOGG, HANSEN, TODD, FIGEL & FREDERICK PLLC
*1615 M St. NW, Suite 400*
*Washington, DC 20036*
*(202) 326-7989*

*Attorneys for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I certify that today, November 13, 2024, I electronically filed the foregoing Brief for Plaintiff-Appellant with the Clerk of the Court for the U.S. Court of Appeals for the Federal Circuit using the appellate CM/ECF system. Counsel of record for all parties will be served by the appellate CM/ECF system.

NOVEMBER 13, 2024

/s/ David I. Berl
DAVID I. BERL

*Attorney for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE WITH TYPEFACE LIMITATION AND WORD-COUNT

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Federal Circuit Rule 32(b). This brief contains 6,989 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally-spaced typeface using Microsoft Word in fourteen-point CenturyExpd BT style.

NOVEMBER 13, 2024

/s/ David I. Berl
DAVID I. BERL

*Attorney for Plaintiff-Appellant*